Marvin BERRY and Elizabeth Jane Berry, Alfred J. Berry and Jeanne M. Berry, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15372.

United States Court of Appeals
Ninth Circuit.

Dec. 10, 1957.

A. P. G. Steffes, Los Angeles, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., C. Guy Tadlock, Ellis N. Slack, I. Henry Kutz, James P. Turner, Attorneys, Department of Justice, for respondent.

Before FEE and BARNES, Circuit Judges, and YANKWICH, District Judge.

JAMES ALGER FEE, Circuit Judge.

This appeal from the Tax Court involves two questions: first, whether the corporate tax return of Edison Vegetable Growers, Inc., was timely filed, and, second, whether the Commissioner was empowered by law to determine a deficiency for a lesser period than a year.

The Commissioner determined, after he had examined the records of Vegetable Growers, that there was a deficiency in the taxes paid by the corporation for the period from March 1, 1949, to October 31, 1949. This decision was based upon the disallowance of loss upon the sale of assets of Vegetable Growers to

certain stockholders. A penalty for failure to file the return within time was also imposed. This determination was based upon the theory that the return should have been filed within two and one-half months after October 31, 1949. The petitions for review were based upon the contention that the corporation did not go out of existence before March 1, 1949, and on the further ground that the Commissioner had no legal power or authority to determine a deficiency for a period less than a year.

The case was heard by the Tax Court, which held for the Commissioner and against petitioners.[1] There was a stipulation filed which covers most of the facts, but certain evidence was introduced from which inferences somewhat at variance with the facts set out in this document might be drawn, if not compelled.

The stipulation showed the matters hereinafter set forth. Vegetable Growers was a corporation duly organized and incorporated under the laws of California and engaged in the business of farming and produce. It was expressly stipulated that "the corporation disposed of all its assets on October 31, 1949, and ceased to do business on that date." It was also agreed that the corporation filed its final corporate income tax return for the fiscal period March 1, 1949, to October 31, 1949. On the date the corporation was liquidated, there was issued and outstanding one class of shares, common, of the total number of 1,000, par value $100.00 per share. The distribution of the shares was stipulated, but it is not important except that Marvin and Elizabeth Jane Berry, petitioners, held a large block as joint tenants and that the remaining shares were held by persons who had a family connection with them. Notwithstanding the previous recitals, it was also stipulated that the last meeting of the board of directors was held on November 17, 1949, and the minutes show that all stockholders agreed to accept par for their stock, except Andrew Berry

and Marvin Berry, who were to receive any excess of par for which they agreed to stand any deficit, should there be one. The stipulation further shows that this meeting reflected a distribution made on October 31, 1949, as of which date the corporation issued checks to all the other stockholders with the exception of the interests of Marvin Berry and Andrew Berry. An excerpt from the stipulation follows:

"On October 31, 1949, the corporation transferred all of its then remaining assets to Marvin and Andrew Berry, petitioners herein. It treated this transfer as a sale and so recorded it on its books. Entries were made on October 31 showing that assets of a book value of $62,392.88 were distributed to Marvin Berry, and Accounts Receivable 'Marvin Berry' was charged $43,471.79. There were distributed assets of a book value of $67,085.47 to Andrew Berry, and Accounts Receivable 'Andrew Berry' was charged $44,555.57. The difference in book value of the assets and charges to Accounts Receivable was charged as a loss on the sale of assets. On the same date, Marvin Berry and Andrew Berry issued their checks in the amounts of their 'Accounts Receivable' on the books of the corporation to liquidate these accounts and the corporation, on the same date, issued its checks to Andrew Berry and Marvin Berry in full liquidation of the corporation, there being no other remaining assets."

There are schedules attached to the stipulation showing a list of the assets sold. The minutes of the meeting were introduced in evidence. The corporation claimed a deduction as an ordinary loss, which the Commissioner disallowed. It was agreed that the sales prices of the assets sold reflect the fair market value. However, the minutes of the meeting of the board of directors held on November 17, which the stipulation

1. Berry v. Commissioner, 1956, 26 T.C. 351.

said "reflected a distribution made on October 31, 1949," are apparently contradictory of certain clauses of the stipulation. The mere fact that there was a meeting would indicate that the corporation was not out of existence on that date. In the second place, the minutes recite that, on November 17, there was cash in the bank of $101,942.88 and a surplus of $1,942.00. Various other transactions are also recited. Marvin E. Berry was reported to have purchased a note in consideration of the assigning to him by the corporation of its interest in another account. He also stated that, if the corporation would assign to him any claims against the transportation companies, he would assume the expense of the necessary clerical services in connection with winding up the corporation and would pay necessary small payroll taxes that might be due. He also reported that he had an offer of sale for "the Cohen Estate lease," which apparently was property of the corporation, and it was agreed, after discussion, that $500.00 should be accepted for the sale of the lease and the entire matter turned over to permit him to secure any additional amount to pay him for his effort.

At the time of trial, counsel for petitioners asked if he would be permitted to offer testimony to explain the stipulation and to show that the corporation did not actually wind up its affairs as of October 31. The court then said, "You wish to show that the company did not die on that date," and counsel answered, "That is right, and actually paid out money on November 17 and was still going on, presumably until the end of its calendar year. That is for the purpose of the penalty." After some further discussion, counsel was told by the court to proceed. Thereafter counsel offered in evidence a check delivered to Vegetable Growers and deposited in its account in the Bank of America on November 17, 1949, for the purpose of showing that the corporation was still conducting certain transactions on November 17 and 18. The court admitted the check for this limited purpose. This much is clear. But the remaining remarks of the court throw doubt as to how far it was intended the stipulation should be modified.

■ The Tax Court held that on October 31, 1949, the corporation ceased to do business and had disposed of all its assets. Accordingly, it was determined that the return was properly made for the fractional part of the year during which it was in existence and the Commissioner possessed authority to find a deficiency for the taxable period covered by the return plus an addition for late filing.[2] A condition precedent to both right and duty to file a corporation income tax return for a period of less than twelve months under Section 47(g) of the Internal Revenue Code of 1939, is that the "taxpayer not [be] in existence during the whole of an annual accounting period ending on the last day of a month, or, if the taxpayer has no such annual accounting period or does not keep books, during the whole of a calendar year."[3] If the corporation were in existence during the whole of the calendar year, then the rule applies that "returns made on the basis of the calendar year shall be made on or before the fifteenth day of March following the close of the calendar year."[4] Under this statute, the return of Vegetable Growers, which was filed on February 20, 1950, was timely under the clause last above quoted. The fact that the corporation itself, in preparing the return, specified a shorter period would not estop the corporation from showing the facts and would not estop these petitioners. The implication that it would have some effect is totally erroneous.

Both questions heretofore propounded depend upon the key proposition of the dissolution of the corporation as of Oc-

2. Internal Revenue Code of 1939, § 291 (a), 26 U.S.C.A.

3. Internal Revenue Code of 1939, § 47(g), 26 U.S.C.A.

4. Internal Revenue Code of 1939, § 53(a) (1).

tober 31, 1949. Section 39.52–1 of Regulation 111 is the guiding star in this situation. This regulation reads in part:

"A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued. If the corporation has valuable claims for which it will bring suit during this period, it has retained assets, and it continues in existence. A corporation does not go out of existence if it is merely turned over to receivers or trustees who continue to operate it."

 Unquestionably, it appears that Vegetable Growers was not dissolved, but continued as a corporation under the state law of California. As the above regulation provides, such existence is not necessarily the test. The Tax Court held, as above noted, that it was dissolved de facto if not de jure. Certainly, the regulation quoted provides for such a contingency. It appears then that "a corporation is not in existence after it ceases business and dissolves, retaining no assets." It is a question of law as well as a question of fact whether Vegetable Growers falls within this category. The key sentence of the decision of the Tax Court is:

"In the instant case, if we accept the stipulation as we do, the corporation had ceased all operations and disposed of all its assets on October 31, 1949, and was thus dissolved de facto, even though it may not yet have been formally dissolved."

As a question of law, a mistake was made in this holding. Simply because a corporation had ceased all operations does not mean that it has ceased business and dissolved under the regulation. As a matter of law, the fact that it had disposed of all its assets on October 31,

1949, does not mean that it could not have acquired assets thereafter which it owned and possessed as of November 17 and 18, 1949. For, even though it might have disposed of all its property as of October 31, if it acquired money in the bank or leases or claims against carriers, which it held on November 17 and 18, it would not fall within the category of a dissolved corporation.

Consideration will now be given to a question of fact, which the trial court must decide when it follows the law just laid down. It must be determined as a question of fact whether Vegetable Growers was doing business after October 31, 1949, and whether this corporation possessed or owned any property or assets after that date.

The stipulation is sharply in discord upon its face upon both these questions. Beyond that, evidence was offered and admitted from which inferences could be drawn, which, to say the least, went beyond the stipulated facts relative to these propositions.

 Furthermore, the record should be made clear as to how far the Tax Court considered the stipulation binding. It is our opinion, on the one hand, that it was the responsibility of counsel for petitioner to obtain a clear ruling of the trial court setting aside or modifying the stipulation. Ordinarily, a stipulation by counsel, especially if in writing, establishes the facts absolutely. Of a certainty, it cannot be disregarded in an appellate court. On the other hand, the presiding judge at the trial did admit evidence which might be conceived to indicate that the corporation was doing business and in possession of assets after October 31, 1949. There are expressions in the record which indicate that the presiding judge intended thereby to permit modification or contradiction of the written stipulation.[5] However, this should have been done by express modification of the instrument, if

---

5. "The Court may set aside a stipulation in whole or in part where justice re-

quires * * *." Rule 31(b) (5), Tax Court Rules of Practice, 26 U.S.C.A.

that were the intention, rather than by indirection.

Under these circumstances, this Court is empowered to set aside the judgment and remand it to the Tax Court, since the record is in such a condition that this Court cannot decide the question presented with justice to all parties.[6] The Tax Court will take whatever evidence is necessary and will have the stipulation clarified in its discretion. Thereafter, findings of fact will be made upon the issues outlined above.

Remanded for further proceedings in accordance with this opinion.

6. 26 U.S.C.A. § 7482(a), (c) (1). See Landa v. Commissioner, 92 U.S.App.D.C. 196, 206 F.2d 431; Timmons v. Commissioner, 4 Cir., 198 F.2d 142; Burton-Sutton Oil Co. v. Commissioner, 5 Cir., 161 F.2d 558; Todd v. Commissioner, 9 Cir., 153 F.2d 553; Cherokee Spinning Co. v. Commissioner, 6 Cir., 143 F.2d 587; Underwood v. Commissioner, 4 Cir., 56 F.2d 67.