In the Matter of the Tax Appeals of
711 MOTORS, INC., Taxpayer

NO. 5607

MARCH 25, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This is an appeal from the findings of fact, conclusions of law and judgment of the tax appeal court, which determined that gross income from sales made in 1972 of new motor vehicles by the taxpayer to U-Drive car rental operators was subject to general excise taxation at the retail rate of 4% rather than at the wholesale rate of ½ of 1%. The appeal

presents a question of interpretation of HRS § 237-4, as amended, which provides in pertinent part as follows:

§237-4  *"Wholesaler"*,  *"jobber"*,  *defined.* "Wholesaler" or "jobber" applies only to a person making sales at wholesale. Only the following are sales at wholesale:

. . . .

> (8) Sales to a licensed leasing company which leases capital goods as a service to others. As used in this paragraph capital goods are goods which have a depreciable life of more than three years.

The facts were stipulated, and the stipulation of facts was incorporated in the findings of fact of the tax appeal court. It was so stipulated and found as fact that the purchasers of the vehicles were companies licensed to do business under HRS Chapter 237; that each of the vehicles sold constituted "capital goods" with a depreciable life of more than three years; and that the business of each of the purchasers constituted furnishing of a "service to others". The average period of use of vehicles purchased from the taxpayer and others by the purchasing companies varied from 14 to 18 months, following which the vehicles were sold. While in use, the vehicles were rented to customers for average periods of from one to seven days under rental contracts which provided for the payment of rent at rates based on time, or on time plus mileage. The rental contracts used by the purchasing companies varied in form, but all recited that the vehicle was thereby rented or leased to the customer, to be returned on a stated date or sooner if demanded by the company. Under all rental contracts the customer was responsible in some degree for loss or damage to the vehicle during the rental period, subject to varying limitations. The business in which the vehicles were so used was characterized in the stipulation of facts as "the U-Drive business". We adopt the same meaning of the term for the purposes of this opinion.

The tax director argues that the statute creates an exemption from taxation to which the rule of strict construction of tax exemptions applies, and that the taxpayer has failed to sustain the burden of establishing by clear proof that U-Drive

car rental operators are leasing companies within the meaning of the statute. In support of this contention the tax director argues, first, that companies engaged in the U-Drive business are not engaged in the business of leasing automobiles and are not "leasing companies" within the meaning of the statute, and, second, that the vehicles sold by the taxpayer to the purchasing companies were not "capital goods" within the meaning of the statute because they did not "have a depreciable life of more than three years." We will consider these arguments in the order in which they have been stated.

I

We agree with the tax appeal court that HRS § 237-4(8) creates a tax exemption and is to be construed strictly.

Subsection (8) was added to § 237-4 by Act 204 of the Session Laws of 1971. Prior to the amendment, sales of motor vehicles to a purchasing company engaged in the business of leasing the vehicles to its customers were retail sales and subject to general excise taxation at the 4% rate. *In re Taxes, Dobbs Houses, Inc.,* 53 Haw. 195, 490 P.2d 902 (1971). HRS § 237-4(8) classifies a "licensed leasing company" in a more favorable category and derogates from the common rate applicable to retail sales. A derogation from the common rate is in the nature of an exemption and to be construed strictly against the taxpayer. *Honolulu Star-Bulletin v. Burns,* 50 Haw. 603, 446 P.2d 171 (1968). It follows that any reasonable doubt as to the construction of HRS § 237-4(8) is to be resolved against the exemption. Nevertheless, where the issue was one of compliance with the terms of an exemption from the general excise tax, we have examined the facts surrounding the production of the gross income sought to be taxed and have not accepted the tax director's attempt to characterize the income as not exempt. *Oceanic Foundation v. Kondo,* 53 Haw. 1, 486 P.2d 396 (1971). Similarly, we must determine whether the construction by the tax appeal court of the exemption in issue here was reasonable as well as strict.

II

The tax director contends that the purchasing companies to which the taxpayer sold the automobiles involved in this case were not engaged in the business of leasing automobiles and, therefore, were not "leasing companies" for the purpose of the statute. In support of this contention, the tax director argues that a contract for temporary use of a motor vehicle is not a lease for the purposes of HRS 237-4(8) unless it is a substitute for a financed purchase of the vehicle, i.e., the aggregate rental over the lease period is designed to equal the cost of the vehicle plus interest. Alternatively, the tax director argues that a qualifying lease must be at least a long-term arrangement and that the short-term rentals here were not leases within this meaning.

The arguments under this head turn on the meaning of "leases" in the first sentence of HRS § 237-4(8). Although technically a bailment, a contract for the hire of a motor vehicle is almost universally termed a lease.[1] However, we are not aware of any decision in which the question at issue was whether a particular contract was within the meaning of the term.

We have most nearly approached consideration of such a question in In re Taxes, Dobbs Houses, Inc., supra. There we had the question whether sales of motor vehicles to a purchaser engaged in the business of leasing them to customers were retail sales or wholesale sales for the purposes of the general excise tax. The tax appeal court had found that the lease contracts involved were in substance conditional sales contracts, so that the purchaser was engaged in the resale of the vehicles and the original sale was at wholesale. We held

---

[1] In a case involving the rental of an automobile from one of the purchasing companies in this case, this court referred to it as "engaged in the business of . . . leasing" the automobile. Stewart v. Budget Rent-A-Car Corp., 52 Haw. 71, 470 P.2d 240 (1970). Cases in which the rental of vehicles in the U-Drive business has been characterized as "leasing" include: Hodge Drive-It-Yourself Co. v. Cincinnati, 284 U.S. 335 (1932); Davidson v. Tomlinson, 165 F.Supp. 455 (S.D.Fla. 1958); Reeves v. Wright & Taylor, 310 Ky. 470, 220 S.W.2d 1007 (1949); Brandon v. Roy, 259 Iowa 1271, 147 N.W.2d 810 (1967); also see Annot: "Construction and Effect of Motor Vehicle Leasing Contracts", 43 A.L.R. 3d 1283 (1972).

that the form of contract then before us "should properly be characterized as a lease", with the result that the purchaser was not engaged in the resale of the vehicle and the original sale was at retail. The elements of the arrangement to which we looked in characterizing it as a lease were that there was no expressed option entitling the lessee to purchase the vehicle; the stipulated depreciated value of the vehicle remaining at the end of the lease term was more than nominal; there was no provision for present or future passage of title from the lessor to the lessee; and the contract specifically negated any title to or equity in the vehicle on the part of the lessee.[2] The rental contracts used by the purchasing companies in this case meet the tests laid down in *Dobbs Houses*, and are of the nature commonly referred to as leases. In the absence of some indication that the legislature intended a different meaning, it would follow that the purchasing companies when entering into such contracts were engaged in leasing within the meaning of HRS § 237-4(8).

The tax director points out that when HRS § 237-4(8) was enacted the definition of retail sales contained in HRS § 237-16, as including the rental of tangible personal property, was left unchanged. It is argued that this indicates a legislative intent to preserve, as a requisite for taxing a sale at the wholesale rate, the element of future resale to the ultimate consumer by the purchaser. In order to reconcile this assumed legislative intent with the use of the terms "leasing" and "leases" in HRS § 237-4(8), the tax director proposes that only those leases which are in economic and practical effect sales of the subject goods are to be treated as leases for the purposes of the statute. It is quite unlikely that any such lease would not be treated as a sale for general excise tax purposes, under the rationale of *Dobbs Houses*. Such a lessor would purchase for resale and the sale to the lessor would be taxed

---

[2] The contract provided for the sale of the vehicle by the lessor after the termination of the lease, with the lessee to pay any amount by which the depreciated value as shown in the depreciation reserve schedule exceeded the sale price and with the lessee to receive any excess of the sale price over the depreciated value. We interpreted this provision as, in effect, an adjustment in rental to reflect either excessive use or good care.

at the wholesale rate, irrespective of HRS § 237-4(8). It is thus quite unlikely, under the tax director's restrictive interpretation, that any change in the preexisting law would have been effected by the enactment of HRS § 237-4(8). We do not agree that such a restrictive interpretation is reasonable.

The tax director proposes, in the alternative, that the term "lease" be read as excluding the rental of vehicles "on a call basis for a short period of time". We are not directed to any authority which consciously so limits the meaning of the term, or to any indication in the history of HRS § 237-4(8) that the legislature had such a distinction in mind. The tax director argues that the term "lease" implies a degree of permanency, which is not present in a mere rental agreement of the nature of the rental contracts made by the purchasing companies in this case.

We have previously referred to the general usage of the term "lease" as including rental contracts of the nature of those involved here. Moreover, one of the requisites for applicability of HRS § 237-4(8) is that the leases be made "as a service to others". We see in this at least a recognition by the legislature that a rental contract providing the use of goods as a temporary service would satisfy the requisites of the statute. In this case, it has been found that the rental contracts were the means by which third parties used the vehicles pursuant to the furnishing of services by the purchasing companies. We conclude that the rental contracts used by the purchasing companies in this case were leases within the meaning of HRS § 237-4(8).

III

Even though the taxpayer may have successfully established that the vehicles involved here were sold to "licensed leasing companies", for HRS § 237-4(8) to be applicable it is also necessary that the vehicles be "capital goods", defined in the statute as "goods which have a depreciable life of more than three years". The term "depreciable life" does not have a clearly apparent meaning and is not readily susceptible of analysis. Read literally, it refers to a life "which can or may

depreciate in valuation.'' WEBSTER'S THIRD NEW
INTERNATIONAL DICTIONARY (1967). The legislative history
of HRS § 237-4(8) provides little help in resolving any
ambiguity.[3] While evidencing an intent to draw a line which
would exclude smaller household items, the legislative com-
mittees otherwise provided no clue to the criteria by which
''depreciable life'' is to be determined.

On the other hand, the term ''depreciable life'' had suffi-
cient currency in the field of depreciation accounting for
income tax purposes to give it a known and established legal
meaning. We find it used in Revenue Procedure 62-21, an
important and widely circulated technical information re-
lease of the Internal Revenue Service issued in 1962, as
synonymous with ''useful life'' in reference to the period of
depreciation of assets for income tax purposes. We have
found no conflicting use of the term. We also note that those
portions of the Internal Revenue Code of 1954 which dealt
with the depreciation deduction and were incorporated into
the Hawaii income tax law by HRS § 235-2, as of the date of
enactment of HRS § 237-4(8), distinguished between tangible
personal property with a useful life of 3 years or more and
property with a shorter life. *See, e.g.,* Internal Revenue Code
§§ 167(c) and 167(f)(2). The excise tax law and the income tax
law deal with sufficiently similar subject matter to require

---

[3] The relevant portions of Standing Committee Report No. 568, 1971 Legislature,
of the Senate Ways and Means Committee (which is substantially identical with
relevant portions of Standing Committee Report No. 841, 1971 Legislature, of the
House Finance Committee) contain the following:

The purpose of Section 2 of the bill, as amended, is to add a new definition to what
sales are sales at wholesale. This new definition will include as a wholesale sale one
in which there is a sale to a licensed leasing company which leases capital goods as a
service to others. Capital goods are defined as ones which have a depreciable life of
more than three years. Your Committee finds that in the leasing field the general
excise tax has a pyramiding effect which increases taxes on the leased article to
twelve per cent. There is a four per cent general excise tax on the sale to the lessor, a
four per cent general excise tax on the leasing of the article, and a four per cent or
one-half of one per cent general excise tax on the final sale of the article by the lessor,
depending on to whom it is sold. The purpose of this section is to change the rate of
taxation on the sale to the lessor to one-half of one per cent providing some tax relief
for the lessor. The wholesale sale provisions have been limited to leased capital
goods with a depreciable life of more than three years in order not to include smaller
household items which are sometimes leased.

construction in relation to each other. HRS § 1-16. We conclude that the legislature used "depreciable life" in HRS § 237-4(8) with the same meaning with which the term "useful life" was used for the purpose of the depreciation deduction under the income tax law.

The regulations under the Internal Revenue Code, to which HRS § 235-2 requires the regulations under the Hawaii income tax law to conform, now and at all times relevant to this case have provided:

> Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property as provided in section 167(g) and § 1.167(g)-1. . . .

> For the purpose of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. . . . (26 C.F.R. § 1.167(a)-1)

The foregoing regulation reflects the decision of the United States Supreme Court in a case involving the depreciation of U-Drive automobiles for income tax purposes. In *Massey Motors, Inc. v. United States*, 364 U.S. 92 (1960), the Court considered the meaning to be given to an income tax regulation which defined the depreciation deduction as "that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan . . . whereby

the aggregate of the amounts so set aside, plus the salvage value, will, at the end of the useful life of the depreciable property, equal the cost or other basis of the property.'' The taxpayer engaged in the business of leasing automobiles to a U-Drive company, and customarily disposed of the cars by sale after an average of 17 months of service. It was claimed that the total economic life of each car was four years, and the taxpayer claimed depreciation on an estimated useful life of four years with no salvage value. The Court looked to the purpose of Congress in providing the allowance for depreciation, and concluded that the taxpayer should recover, under the depreciation allowance, only the cost of the cars less estimated resale value. To achieve this result it was necessary that the useful lives of the cars be related to the period in which they might reasonably be expected to be employed in the taxpayer's business. The Court announced the following rule:

> We have concluded that the reasonable allowance for depreciation of the property in question used in the taxpayer's business is to be calculated over the estimated useful life of the asset while actually employed by the taxpayer, applying a depreciation base of the cost of the property to the taxpayer less its resale value at the estimated time of disposal.

The rule of *Massey Motors* has been embodied in the federal income tax regulations adopted under the Internal Revenue Code, and constituted the governing principle upon which the useful life of an asset was determinable in depreciation accounting for the purposes of the Hawaii income tax during 1972, the tax year with which we are concerned.[4] It follows that the depreciable life of each of the vehicles sold by

---

[4] Reg. 1.167(a)-11, which was in effect in 1972, provides an optional asset depreciation range and class life system (ADR) for determining the reasonable allowance for depreciation of designated classes of assets, to be elected by the taxpayer at the time of filing the income tax return for the year in which the asset is first placed in service. Reg. 1.167(a)-11 was issued pursuant to an amendment of Sec. 167 of the Internal Revenue Code by Public Law 92-178, which was not incorporated into the Hawaii income tax law until the amendment of HRS § 235-2 by Act 86, S.L. 1975, effective May 14, 1975. The ADR system permits a taxpayer to select a useful life from the applicable asset depreciation range, in substitution for

the taxpayer in this case was the period over which the vehicle might reasonably have been expected, at the time of the sale, to be useful to the purchasing company in its business, having reference to all relevant factors, including the policy of the purchasing company as to retirement and replacement.[5] The tax director contends that it is apparent from the stipulation of facts that this period varied from 14 to 18 months and thus was far short of three years.

However, the tax director has stipulated and the tax appeal court has found that each of the vehicles sold by the taxpayer constituted capital goods with a depreciable life of more than three years. Findings of fact, of course, may not be set aside unless clearly erroneous. Rule 52(a), HRCP. But a finding which is a composite of fact and law is not binding where the factual finding is induced by an error of law. 5A MOORE'S FEDERAL PRACTICE ¶ 52.05[1] (2d ed. 1948). We would not be foreclosed by the findings of fact of the tax appeal court from applying the test of depreciable life required by HRS § 237-4(8). On the other hand, the formal and deliberate stipulation of facts into which the tax director and the taxpayer entered cannot be reconciled with a finding that these vehicles were not capital goods with depreciable lives of more than three years. So long as that stipulation stands, the tax director cannot prevail in this case. *Verkouteren v. District of Columbia*, 346 F.2d 842 (D.C. Cir. 1965). Although the stipulation of facts was not incorporated into a pre-trial order, it was given the same effect by the tax

---

the useful life determined under Reg. 1.167(a)-1(b). Since the useful life so established is not determinable until the taxpayer makes the required election, it would not be possible for a seller of goods to a leasing company to determine, from data available at the time of sale, whether a useful life in excess of 3 years would be established by the purchaser under the ADR system. It may be doubted, therefore, whether useful lives established under the ADR system have any relevancy to the determination of depreciable lives for purposes of HRS § 237-4(8). However, since the ADR system did not have statutory sanction for Hawaii income tax purposes in the year with which we are concerned in this case, this question is not before us.

[5] While this conclusion requires the seller of capital goods to ascertain the practices of the leasing company to determine the availability of HRS § 237-4(8), it is necessary in all events for the seller to ascertain that the purchaser operates as a leasing company within the meaning of the statute.

appeal court. Pursuant to Rule 29 of the Tax Appeal Court and Rule 16, HRCP, the stipulation governs the course of the trial unless modified by the court to prevent manifest injustice. It may not be disregarded by this court, and if it is to be set aside or modified, that should take place in the tax appeal court upon whatever evidence is necessary. *Berry v. Commissioner of Internal Revenue*, 254 F.2d 471 (9th Cir. 1957).

We conclude that the way is not open to us to dispose of this case in this appeal, and that the case must be remanded to the tax appeal court. Upon the remand, Rule 52(b), HRCP, will permit the tax director to move for amendment of the findings of fact of the tax appeal court and to seek relief from the stipulation of facts. From the record before us, it does not appear that the taxpayer will be prejudiced by a modification of the stipulation to exclude the statement that the vehicles constituted capital goods with a depreciable life of more than three years, if the taxpayer is afforded a suitable opportunity to present evidence upon the issue and the stipulation is modified in such other respects as may be appropriate. In the absence of a showing that the stipulation constituted a binding settlement,[6] or that modification of the stipulation will create rather than prevent injustice, such relief should be granted. *Central Distributors, Inc. v. M.E.T., Inc.*, 403 F.2d 943 (5th Cir. 1968).

The judgment of the tax appeal court is reversed and the case is remanded for further proceedings consistent with this opinion.

*Keith J. Steiner* for Taxpayer-Appellant.

*T. Bruce Honda*, Deputy Attorney General, State of Hawaii, for Appellee.

---

[6] In Pacheco v. Hilo Electric Light Co., 55 Haw. 375, 520 P.2d 62 (1974), we held that the State, as a third party defendant, was bound by a settlement "to which it knowingly and unequivocally assented in open court".