ALBERT TRELOAR, Claimant-Appellee, *v.* SWINERTON AND WALBERG CO., Employer-Appellant, and INDUSTRIAL INDEMNITY CO., Insurance Carrier-Appellant

NO. 7592

(CASE NO. AB79-2; 2-74-09284)

NOVEMBER 1, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED TEMPORARILY

OPINION OF THE COURT BY NAKAMURA, J.

The question in the case before us on a grant of certiorari is whether the Labor and Industrial Relations Appeals Board (the Appeals Board) erred when it affirmed the decision of the Director of Labor and Industrial Relations (the Director) allowing the workers' compensation claim of Claimant-appellee Albert Treloar (Treloar or the claimant) to be reopened pursuant to HRS § 386-89(c).[1] The Intermediate Court of Appeals reversed the Appeals Board,

---

[1] HRS § 386-89 covers the reopenings of claims; § 386-89(c), which is relevant here, reads as follows:

(c) On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to ten years after date of the last payment of compensation,

 

holding that the last sentence of § 386-89(c) prevents the reopening of a claim after an award of periodic benefit payments has been commuted to a lump sum and paid. We chose to review this ruling because of the discrepancy between the appellate court's reading of HRS §§ 386-89(c) and 386-54[2] and the Director's implementation of

---

whether or not a decision awarding compensation has been issued, or at any time prior to ten years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation. No compensation case may be reviewed oftener than once in six months and no case in which a claim has been rejected shall be reviewed more than once if on such review the claim is again rejected. The decision shall not affect any compensation previously paid, except that an increase of the compensation may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, a decrease of the compensation may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased compensation shall be deducted from any unpaid compensation in such manner and by such method as may be determined by the director. In the event any such decision increases the compensation in a case where the employee has received damages from a third party pursuant to section 386-8 in excess of compensation previously awarded, the amount of such excess shall constitute a pro tanto satisfaction of the amount of the additional compensation awarded. This subsection shall not apply when the employer's liability for compensation has been discharged in whole by the payment of a lump sum in accordance with section 386-54.

[2] HRS § 386-54 covers the commutation of periodic benefit payments; it reads as follows:

*Commutation of periodic payments.* Upon application of the disabled employee, his dependents or the employer, the director of labor and industrial relations may order that the periodic benefit payments be commuted to one or more lump sum payments equal to the present value at the time when the lump sum payments are due of the future benefit payments, computed at four per cent true discount compounded annually, if he finds that such commutation is in the best interest of the employee or his dependents and does not impose undue hardship upon the employer.

The probability of the death of the disabled employee or of a dependent entitled to benefits before the expiration of the period during which he is entitled to receive such payments and the probability of the remarriage of the spouse shall be determined in accordance with the latest United States Life Tables and the American Remarriage Tables, respectively, as adjusted and corrected on the basis of the most recent available experience, or in accordance with any other appropriate actuarial tables selected by the director, upon advice of the chief actuary of the Social Security Administration. The probability of the happening of any other contingency affecting the amount or duration of the benefit payments shall not be considered.

Payment of the lump sums shall discharge the employer of his liability for the corresponding income and indemnity benefits.

the same provisions. Having reviewed the record and the pertinent statutory provisions, we set aside the decision of the appellate court and affirm the decision of the Appeals Board.

## I.

The claimant sustained an injury to his low back on April 9, 1974 while shoveling rock and soil at the Kukui Plaza construction site in the course of his employment with Employer-appellant Swinerton and Walberg Co. (Swinerton). The formal filing of a claim for workers' compensation benefits by Treloar was obviated by the acknowledgment of liability for the work injury by Swinerton's insurance carrier, Insurance carrier-appellant Industrial Indemnity Co. (Industrial). Subsequently, however, Industrial questioned the duration of claimant's temporary total disability for work. And at a hearing conducted on January 25, 1975 by a hearings officer of the Disability Compensation Division of the Department of Labor and Industrial Relations, it was determined that the claimant had suffered a compensable work injury, he became totally disabled for work from April 9, 1974, and he continued to be so disabled at the time of the hearing. A decision and order reflecting the foregoing findings and reciting the claimant's entitlement to the benefits provided by the Workers' Compensation Law was issued by the Director on March 25, 1975. The employer was further directed to pay claimant weekly compensation for temporary total disability from April 10, 1974 until "such time as is determined by the Director that such disability has ended."

A hearing to determine permanent disability was conducted on November 17, 1975. In the course thereof it was agreed among claimant, Industrial's representative, and the hearings officer that the claimant's temporary total disability had come to an end on July 31, 1975. On the basis of medical evidence in the form of physicians' reports and other evidence, the hearings officer found the claimant was permanently and partially disabled as a result of his work injury and the extent of his disability was twenty-five percent of the whole man. A decision and order reflecting the foregoing findings was issued by the Director on November 21, 1975. It further recited the claimant's entitlement to periodic benefit payments for seventy-eight weeks commencing August 1, 1975, on account of the perma-

nent partial disability.

The claimant, however, immediately sought the Director's approval of a commutation of the then unpaid periodic benefit payments into a lump sum pursuant to HRS § 386-54. The application, also filed on November 21, 1975, was submitted on a form, WC-12, specifically prepared by the Department of Labor and Industrial Relations to facilitate the administration of the provisions of HRS § 386-54. The commutation request was approved on the same day, and on November 24, 1975, Treloar received $6,679.49 in a single payment in lieu of $7,023.22 that otherwise would have been paid through weekly payments of $112.50 extending over a period of sixty-two weeks. The application denoted the claimant's understanding that he would "not be able to reopen this case for the period of commutation." The order approving commutation expressly provided that "[p]ayment of the [lump] sum . . . [would] relieve the employer of his liability to pay future periodic payments totalling $7,023.22."

Approximately two years later Treloar, who then resided on the mainland, sought a reopening of the compensation case on the ground of a change in his physical condition, submitting a written opinion from a physician that a change had probably occurred. The request to reopen the case pursuant to HRS § 386-89(c) was granted, and a hearing was conducted on June 5, 1978 "to determine further liability and other issues as appropriate." Treloar, appearing through counsel, submitted an affidavit attesting his inability to engage in gainful labor and other documentary evidence in support of the claim that his physical condition had worsened to a point of total disability. After reviewing the foregoing evidence and other medical reports, the hearings officer found the claimant had again become totally disabled for work on December 2, 1977. And by order of the Director issued on August 15, 1978, Swinerton was directed to pay Treloar "weekly compensation of $112.50 for total disability for work from December 2, 1977 and terminating at such time . . . that such disability has ended."

Swinerton and Industrial appealed the decision to the Board, where the case was submitted for decision primarily on the record made below and memoranda filed by the parties. The "basic questions" posed for Board determination, as stated by counsel for

Swinerton and Industrial in his memorandum, were "whether Claimant claimed and showed his current PPD (permanent partial disability) is in excess of the 25% of the whole man awarded in 1975 and makes him totally disabled, and whether the same was caused by the industrial accident." Counsel argued Treloar had failed to sustain his burden in both respects.[3] But the Board concluded otherwise, and affirmed the Director's decision and order of August 15, 1978. A further appeal to this court followed.

On this appeal, Swinerton and Industrial raised two new arguments: that HRS § 386-89(c) prevented the reopening of Treloar's claim because the prior award of permanent partial disability benefits had been commuted to a single payment and discharged pursuant to HRS § 386-54 and that the decision of the Appeals Board was invalid because it had been rendered without the participation of the Board's chairman.[4] The appeal was assigned to the Intermediate Court of Appeals.

The appellate court reversed the Appeals Board, finding it "undisputed in the record that the employer's liability for compensation had been discharged by payment of a lump sum in accordance with § 386-54." *Treloar v. Swinerton & Walberg Co.*, 3 Haw. App. 41, 42, 641 P.2d 327, 327 (1982). The court concluded the prior commutation of the award was "dispositive of this appeal since the last sentence of § 386-89(c), HRS, provides:

> This subsection shall not apply when the employer's liability for compensation has been discharged in whole by the payment of a lump sum in accordance with section 386-54."

*Id.* at 41, 641 P.2d at 327.

## II.

"[O]ur primary duty [in interpreting and applying statutes] is to ascertain the intention of the legislature and to implement that

---

[3] No argument that the commutation of the periodic benefit payments previously awarded for permanent partial disability precluded a reopening was advanced by Swinerton and Industrial before the Director or the Board.

[4] In Survivors of Cariaga v. Del Monte Corp., 65 Haw. 404, 652 P.2d 1134 (1982), we ruled that a decision reached by only two members of the Appeals Board was not necessarily defective.

intention to the fullest degree. *Keller v. Thompson,* 56 Haw. 183, 189, 532 P.2d 664, 669 (1975)." *Black Construction Co. v. Agsalud,* 64 Haw. 274, 283, 639 P.2d 1088, 1094 (1982). Legislative intent, we have recognized, "is to be obtained primarily from the language used in a statute." *In re Castro,* 44 Haw. 455, 458, 355 P.2d 46, 49 (1960). *See also In re Hawaiian Telephone Co.,* 61 Haw. 572, 577, 608 P.2d 383, 387 (1980); *Territory v. Fasi,* 40 Haw. 478, 484 (1954); *County of Kauai v. McGonagle,* 33 Haw. 915, 920 (1936). "But we have rejected an approach to statutory construction which limits us to the words of a statute," *Dependents of Crawford v. Financial Plaza Contractors,* 64 Haw. 415, 420, 643 P.2d 48, 52 (1982), for "[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.' " *Train v. Colorado Public Interest Research Group,* 426 U.S. 1, 10 (1976) (quoting *United States v. American Trucking Associations,* 310 U.S. 534, 543-44 (1940) (footnotes omitted)).

## A.

With these precepts in mind, we begin our analysis by noting HRS § 386-89(c) must be read in tandem with HRS § 386-54 because the last sentence of the former stipulates that its provisions "shall not apply when the employer's liability for compensation has been discharged in whole by the payment of a lump sum in accordance with" the latter. At first glance, the sentence may give an appearance of disallowing a reopening whenever an employer's obligation under a commuted award has been met. But an examination of the relevant provisions discloses that reopenings are proscribed only when an employer's liability for compensation has been *discharged in whole* in accord with § 386-54, which does not tell us exactly when this occurs. Hence, the pertinent statutory language is open to more than one interpretation.

Swinerton and Industrial naturally urge the adoption of the appellate court's view that the approved payment in a lump sum of the outstanding balance of the employer's liability for weekly income and indemnity benefits related to an existing condition constitutes a discharge in whole of its liability for compensation. Treloar asserts

the payment of a commuted award for permanent partial disability does not serve to discharge the liability in whole; in his view it only satisfies the employer's obligation in part, that part which was subjected to commutation. He purports to find support for this proposition in the language of § 386-54 to the effect that such payment discharges liability "for the corresponding income and indemnity benefits." Thus he claims HRS § 386-89(c) does not preclude the reopening of a case thereafter if a change in physical condition or a mistake in fact related thereto can be demonstrated.

### B.

We turn in our quest for intended meaning to an obvious extrinsic aid to construction, the legislative history of HRS § 386-89(c). *See Dependents of Crawford v. Financial Plaza Contractors, supra,* 64 Haw. at 421-23, 643 P.2d at 52-53; *In re Estate of Spencer,* 60 Haw. 497, 501, 591 P.2d 611, 614 (1979). We learn therefrom that the last sentence of the relevant section, then R.L.H. 1955, as amended, § 97-98, formerly read:

This paragraph shall not apply when the employer's liability for compensation has been discharged in whole *or in part* by the payment of a lump sum in accordance with the provisions of section 97-53.[5]

(Emphasis added). But in 1965, the words "or in part" were stricken in order to "eliminate the unfair consequences of the present language by making it clear that a partial commutation would not preclude a future reopening, if warranted." Hse. Stand. Comm. Rep. No. 866, in 1965 House Journal, at 761. The legislative committee reports on the relevant measure, S. B. No. 762, are set out in the margin.[6]

---

[5] Section 97-53, then R.L.H. 1955, as amended, § 97-53, was designated as HRS § 386-54 when the Revised Laws of Hawaii were recodified.

[6] The report of the Senate Committee on Labor, whence S. B. No. 762 initially emerged, expressed the bill's purpose and intent in these terms:

The purpose of this bill is to allow a party in interest under the Workmen's Compensation Law to re-open his case even though the employer's liability for compensation has been discharged "in part" by the payment of a lump sum. At present, the workmen's compensation law provides that any party in interest may re-open a case on the ground of a change in, or of a mistake in a determination of

Not surprisingly, the opposing parties both cite the committee reports as enhancing their positions. For we cannot say the assertions of Swinerton and Industrial in this regard are entirely without substance; the House report contains language that can be read as supporting reopenings only where "the employee continues to receive periodic payments" after the commuted sum has been paid. Yet we would have to agree with claimant that the tenor of the legislative reports and the particular expressions of intent lend greater support to his position. It would be difficult, for example, to disregard legislative sentiment to this effect:

> If he has completely "lump summed" out and gotten everything he was entitled to, then it would only be fair to bar him from reopening his claim. But if he only received a partial commu-

---

fact related to, the physical condition of the injured employee. However, if a lump sum payment in whole or in part is made to the injured workers, such right to re-open is prohibited.

This bill limits such prohibition to cases where the employer's liability for compensation has been discharged in whole by the payment of a lump sum.

Sen. Stand. Comm. Rep. No. 385, in 1965 Senate Journal, at 996-97.

The report of the House Committee on Labor and Employment Problems expressed the measure's purpose and intended effect as follows:

The purpose of this bill is to amend Section 97-98, Revised Laws of Hawaii 1955, as amended, by deleting the words "or in part" therefrom. Section 97-53 permits commutation by the director of periodic benefit payments to one or more lump sum payments. Payment of such lump sums discharges the employer of his liability for the corresponding income and indemnity benefits, that is for a partial payment, the liability is only discharged *pro tanto*. Oftentimes it happens that an injured employee needs a lump sum for an emergency, such as reroofing his house to keep the rain out, and the director approves this and the employee continues to receive periodic payments, sometimes for a substantial balance.

The present effect of the language in Section 97-98, last sentence, however, is to bar an employee from ever reopening his claim on a showing of change in, or a mistake in a determination of fact related to, the physical condition of the injured employee, if he has ever received any partial lump sum payment, no matter how small. If he has completely "lump summed" out and gotten everything he was entitled to, then it would only be fair to bar him from reopening his claim. But if he only received a partial commutation, for instance to fix a leaking roof, it would be grossly unfair to thereafter bar him from ever reopening his case no matter how meritorious a reopening might be. It is believed the drafters of the present language did not intend this effect. The proposed bill would eliminate the unfair consequences of the present language by making it clear that a partial commutation would not preclude a future reopening, if warranted.

Hse. Stand. Comm. Rep. No. 866, *supra*, at 761 (emphasis in the original).

tation, for instance to fix a leaking roof, it would be grossly unfair to thereafter bar him from ever reopening his case no matter how meritorious a reopening might be.

Hse. Stand. Comm. Rep. No. 866, *supra.* That reopenings are precluded only where an injured worker's claim for periodic benefits has been "completely 'lump summed' out and [he has] gotten everything he was entitled to" would consequently be a fair construction of the sentence in question. But as the relevant history is not entirely free of ambiguity, we do not rest this conclusion on our reading of the committee reports alone.

## C.

In a previous search for statutory meaning, we observed there

is a well established rule of statutory construction that, where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous. *Estrin v. Moss,* 221 Tenn. 657, 430 S.W.2d 345 (1968); *Udall v. Tallman,* 380 U.S. 1 (1965); *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294 (1933).

*Waikiki Resort Hotel v. City & County,* 63 Haw. 222, 242-43, 624 P.2d 1353, 1368 (1981). We further found

that administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful. . . . The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.

*Norwegian Nitrogen Products Co. v. United States, supra,* 288 U.S. at 315 (citations omitted) (quoted in *Waikiki Resort Hotel v. City & County, supra,* 63 Haw. at 243, 624 P.2d at 1368).

The Department of Labor and Industrial Relations (the department) is charged with the responsibility of carrying out the mandate of the Workers' Compensation Law. Under the department's construction of HRS § 386-54, the payment of a commuted sum for

permanent partial disability only relieves the employer of liability for periodic benefits during a given period, the period it would have been obliged to make payments had the commutation not been allowed. And the injured worker is precluded from seeking such benefits for the same period.[7] No discharge in whole of the employer's compensation liability is deemed to have occurred.

We do not find the foregoing administrative construction, which is reflected in the Director's ruling on Treloar's request to reopen his case after the passage of two years and in the practice form expressly developed by the department for the processing of such requests, to be palpably erroneous. To the contrary, we find there is much to recommend it.

The construction is consistent with the beneficent and liberal purposes of the Workers' Compensation Law. "[S]ince *Re Ichijiro Ikoma,* 23 Haw. 291, 295, 296 (1916), the first case in which this court addressed Hawaii's then-new workers' compensation statute, we have considered questions of construing that law with firm recognition of the humanitarian purpose for which it was enacted." *Dependents of Crawford v. Financial Plaza Contractors, supra,* 64 Haw. at 421, 643 P.2d at 52. *See e.g., Lawhead v. United Airlines,* 59 Haw. 551, 559-60, 584 P.2d 119, 124-25 (1978); *De Fries v. Association of Owners,* 57 Haw. 296, 303-04, 555 P.2d 855, 860 (1976); *Kepa v. Hawaii Welding Co.,* 56 Haw. 544, 549, 545 P.2d 687, 691 (1976); *Akamine v.*

---

[7] As noted earlier, the department has developed a practice and procedure form, designated as WC-12, to facilitate the administration of HRS § 386-54. That portion of the form covering a claimant's understanding of the effect of a commutation reads:

I understand that:

1. The requested amount equals the present value of future periodic payments totalling $————————— at 4% true discount compunded [sic] annually.

2. The acceptance of the requested amount will relieve the employer of his liability to pay future period [sic] payments totalling $————————— for ————————— weeks.

3. I will not be able to reopen this case for the period of commutation.

And the part of the form covering the approval of the requested commutation reads:

The above request for commutation is approved. Payment of the sum will relieve the employer of his liability to pay future periodic payments totalling $—————————.

*Hawaiian Packing & Crating Co.,* 53 Haw. 406, 409, 495 P.2d 1164, 1166 (1972). We should expect no less of the administrative agency charged with the direct responsibility of carrying out its mandate. Furthermore, the Director's application of HRS § 386-89(c) is consonant with the legislative intent to "eliminate the unfair consequences" of foreclosing reopenings after partial commutations. Hse. Stand. Comm. Rep. No. 866, *supra.*

### III.

We earlier said a fair construction of the last sentence of HRS § 386-89(c) would only prevent a reopening when an injured worker's claim for periodic benefits has been "completely 'lump summed' out," but did not state when such event might occur. We would say a clear instance where "the employer's liability for compensation has been discharged in whole by the payment of a lump sum" would be a case in which a commutation of a permanent total disability award has been effected. For then, the commutation document would denote the claimant had received "everything he was entitled to" in periodic benefit payments.

But in Treloar's case, both he and Industrial were mindful that the lump sum was in lieu of benefit payments covering a period of sixty-two weeks and that a reopening was precluded for the same period. The document reflecting the transaction did not indicate in any way that he was receiving everything he was entitled to; it implicitly sanctioned a possible reopening of the case for the payment of further benefits after the "period of commutation." He was not "completely 'lump summed' out," and the employer's liability for compensation was not "discharged in whole."

The decision of the Intermediate Court of Appeals is reversed.[8] From our review of the record, we also conclude there was sufficient evidence of a change in condition to sustain a reopening. We therefore affirm the decision of the Appeals Board.

---

[8] A possible alternative ground for reversing the appellate court's decision with regard to the issue of the applicability of the last sentence of HRS § 386-89(c) to this case is the apparent improper raising of the issue on appeal by Swinerton and Industrial.

"[T]he general rule that an appellate court will consider only such questions as were raised and reserved in the lower court applies on review by courts of

*Andrew S. Ono (Robert H. Thompson; Delay, Curran & Boling,* of counsel) for the Writ and on the brief, for claimant-appellee.

*Leroy T. Kuwasaki, Jr.,* on the brief, for employer and insurance carrier-appellant.

administrative determinations so as to preclude from consideration questions or issues which were not raised in administrative proceedings. *Petition of Village Board of Wheatland,* 77 N.D. 194, 42 N.W.2d 321 (1950)."

Waikiki Resort Hotel v. City & County, *supra,* 63 Haw. at 250, 624 P.2d at 1372.

The record clearly shows that Swinerton and Industrial did not raise or reserve the issue of commutation and its effect on the reopening of a workers' compensation case in the Appeals Board hearing in the instant case. Hence, we could have concluded that Swinerton and Industrial were precluded from raising this issue on appeal.