RAYMOND M. GAKIYA, Plaintiff-Appellant, *v.* HALLMARK
PROPERTIES, INC., Defendant, and THE REAL ESTATE
COMMISSION OF THE STATE OF HAWAII, Defendant-
Appellee

NO. 11019

(CIVIL NO. 70718)

JULY 18, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

Plaintiff-Appellant Raymond M. Gakiya (Gakiya) appeals from a circuit court order directing that his claim for payment from the Real Estate Recovery Fund (Fund) against Hallmark Properties, Inc. (Hallmark) be apportioned with certain other outstanding claims. Gakiya contends that the Defendant-Appellee Real Estate Commission (Commission) should have paid his claim in full on a first-come, first-served basis. He further contends that as a result of the unauthorized apportionment, he received $1,649.85 of his certified claim for $9,335.11.

Finding no abuse of discretion, we affirm.

I.

On April 16, 1982, Gakiya filed a complaint in the circuit court against Hallmark, a licensed real estate broker alleging fraud and misrepresentation. On February 2, 1984, the court below awarded summary judgment in favor of Gakiya and against Hallmark for $9,335.11 including interest, court costs and attorneys fees.

On March 5, 1984, pursuant to Hawaii Revised Statutes (HRS) §§ 467-16, *et seq.,*[1] Gakiya filed a motion for an order directing payment of his claim from the Fund. His supporting memorandum noted that the lower court already had awarded judgment in favor of another claimant and against Hallmark and had directed payment from the Fund based upon that judgment.[2]

---

[1]HRS § 467-16 (1985) provides in relevant part:

*Real estate recovery fund; use of fund; fees.* The real estate commission shall establish and maintain a real estate recovery fund from which any person aggrieved by an act, representation, transaction, or conduct of a duly licensed real estate broker, or real estate salesman, upon the grounds of fraud, misrepresentation, or deceit, may recover by order of the circuit court or district court of the county where the violation occurred, an amount of not more than $25,000 per transaction for damages sustained by the fraud, misrepresentation, or deceit, including court costs and fees as set by law, and reasonable attorney fees as determined by the court.

At the time Gakiya was injured, the statutory limit was $10,000.

[2]According to the record, this claim was for approximately $10,000 and was paid in full from the recovery fund. At the relevant point in time, HRS § 467-24 capped the liability of the recovery fund at $40,000 for any one licensee. Thus, at the time of the March 5, 1984 motion, the recovery fund's remaining liability for claims against Hallmark was approximately $30,000.

At a March 20, 1984 hearing on Gakiya's motion, the Commission stated that a number of other claims against Hallmark were pending and that the sum of these claims clearly exceeded the amount of money available in the Hallmark Fund account.[3] The Commission contended that under the circumstances, its traditional practice of paying claims in full on a first-in basis should not apply to the Hallmark case. Instead, it asked that Gakiya's claim be paid in proportion to the other pending claims. Over Gakiya's objection, the court directed payment from the Fund on a *pro rata* basis.

On March 29, 1984, Gakiya and the Commission entered into a court-approved stipulation that set forth the procedures for apportioning Gakiya's claim. According to its terms, Gakiya's claim was to be paid in full if the sum of all the orders directing payment from the Fund filed within the following ninety days did not outstrip the Hallmark account.[4] If the sum of these orders did outrun the account, then Gakiya was to be paid in proportion to these other claims.

As of the June 27, 1984 cutoff, the sum of all the orders directing payment, including Gakiya's, was approximately $27,000, and the funds in the Hallmark account were sufficient to pay each claim in full. However, on June 28, 1984, an order directing payment of the Yamamuras' claims for $143,163, conditioned upon apportionment, was file stamped by the clerk of the circuit court. The Yamamura's order had been signed by the parties and submitted to the court on May 31, 1984.[5]

Citing the stipulation, Gakiya filed a motion seeking full payment of his claim for $9,335.11. The Commission contended that Gakiya was not entitled to recover the full amount because the Yamamuras, by submitting their order to the court on May 31, 1984, had technically met the ninety-day deadline.

On August 22, 1985, the lower court entered a judgment awarding Gakiya the pro-rated sum of $1,649.85. Gakiya's motion for reconsideration was denied after a hearing.

---

[3]Among the pending claims were those of Mark T. Yamamura and certain other related claimants (The Yamamuras) totaling $143,163.18.

[4]The ninety-day period, which began upon the March 29, 1984 filing of the stipulation, expired on June 27, 1984.

[5]It is not clear from the record why the order was not file-stamped sooner, although the judge below acknowledged that his office might have been at fault.

## II.

The primary issues on appeal are as follows:

(1) Whether the Commission may pay multiple claims against a licensee's account on a *pro rata* basis after it becomes clear that the sum of these claims is greater than the amount of available money; and

(2) Whether Gakiya's claim nevertheless should have been paid in full because, by the terms of the stipulation, the sum of all the claims filed by the ninetieth day did not exceed the maximum liability of the Fund.

## III.

Whether the Commission must continue to pay claims against the Fund on a first-in basis when the demands for payment outstrip the supply of available money is a matter of first impression here.

Gakiya initially argues that the court below lacked the statutory authority to direct payment of his claim on a *pro rata* basis. He contends that HRS § 467-18 sets forth the specific procedures for perfecting a claim against the Fund, and that once compliance with these procedures has been proven, the court must order payment of whatever sum has been found to be due on the claim.[6] From Gakiya's viewpoint, apportionment was a court-fashioned additional condition that was not authorized by the statute.

Gakiya further argues that the legislature contemplated a first-in payment scheme, as indicated by HRS § 467-18(f):

If, at any time, the money deposited in the real estate recovery fund is insufficient to satisfy any duly authorized claim or portion thereof, the commission shall, when sufficient money has been deposited in the real estate recovery fund, satisfy such unpaid claims or portions

---

[6]HRS § 467-18(d) provides:

The court shall make an order directed to the commission requiring payment from the real estate recovery fund of whatever sum it finds to be payable upon the claim, pursuant to and in accordance with the limitations contained in this section, if the court is satisfied, upon the hearing, of the truth of all matters required to be shown by the aggrieved person by subsection (c) of this section and that the aggrieved person has fully pursued and exhausted all remedies available to him for recovering the amount awarded by the judgment of the court.

thereof, in the order that such claims or portions thereof were originally filed, plus accumulated interest at the rate of six per cent a year.

We have repeatedly held that the "primary duty in interpreting and applying statutes is to ascertain the intention of the legislature and to implement that intention to the fullest degree." *Treloar v. Swinerton & Walberg Co.,* 65 Haw. 415, 420-21, 653 P.2d 420, 424 (1982) (quoting *Black Construction Co. v. Agsalud,* 64 Haw. 274, 283, 639 P.2d 1088, 1094 (1982), quoting *Keller v. Thompson,* 56 Haw. 183, 189, 532 P.2d 664, 669 (1975)). When doubt exists as to the meaning of a statute, courts may consider the relevant legislative history. *Educators Ventures, Inc. v. Bundy,* 3 Haw. App. 435, 652 P.2d 637 (1982).

The stated purpose of HRS § 467-16 is "to furnish financial protection to the consumer public . . . by providing a fund which, under certain circumstances, will satisfy unpaid judgments against real estate brokers and salesmen." House Stand. Comm. Rep. No. 532, in 1967 House Journal at 673, Sen. Stand. Comm. Rep. No. 647, in 1967 Senate Journal at 1146. *See Mabe v. Real Estate Commission,* 4 Haw. App. 552, 554, 670 P.2d 459, 461 (1983).

Moreover, by capping individual recovery at $25,000 pursuant to HRS § 467-16 (1985) and maximum liability for any one licensee at $50,000 pursuant to HRS § 467-24 (1985), it is clear to us that the legislature did not intend for the Fund to compensate fully all claimants all of the time and that the determination of compensation under the Fund is subject to the court's discretion.

In light of the foregoing, we agree that as a general rule, the Commission should continue its practice of fully honoring claims on a first-come, first-served basis. However, we also agree that this rule must bend whenever it becomes clear to the Commission that the pending claims will exceed the available funds.[7] At this point, we believe that *pro rata* distribution is the fairest and most evenhanded solution.

To constitute an abuse of discretion, it must be established that the trial court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party

---

[7]HRS § 467-18(a) puts the Commission in a good position to monitor pending claims because of the requirement that potential claimants notify the Commission in writing of any actions that may result in collection from the Fund.

litigant." *Title Guaranty Escrow Services, Inc. v. Powley,* 2 Haw. App. 265, 270, 630 P.2d 642, 645 (1981) (quoting *State v. Sacoco,* 45 Haw. 288, 292, 367 P.2d 11, 13 (1961)).

In the case before us, the lower court faced the dilemma of trying to satisfy legitimate claims of more than $170,000 with $30,000 in available funds. Under the circumstances, we find no abuse of discretion in directing that Gakiya's claim be paid in proportion to the other pending claims.

IV.

Gakiya contends that because the Yamamuras' order was file-stamped June 28, 1984, one day after the stipulated ninety-day cutoff, the court should not have considered their claims for $143,163 in determining whether apportionment was ultimately necessary.[8] He contends that the court had no discretionary authority to alter unilaterally the terms of the stipulation it had approved previously. *First Trust Co. of Hilo v. Cabrinha,* 24 Haw. 655 (1919); *see also, Ainamalu Corp. v. Honolulu Transport & Warehouse Corp.,* 56 Haw. 362, 537 P.2d 17 (1975).

While parties ordinarily are bound by the terms of their stipulations, we have allowed certain stipulations to be set aside or modified in order to prevent manifest injustice. *See In Re 711 Motors, Inc.,* 56 Haw. 644, 654, 547 P.2d 1343, 1350 (1975); *State v. Foster,* 44 Haw. 403, 423-24, 354 P.2d 960, 971 (1960).

We believe that the prevention of manifest injustice required such a

---

[8]The stipulation upon which Gakiya relies provides in relevant part:

1. The Plaintiff shall be paid his claim in full against the Real Estate Recovery Fund, provided that the sum of the orders directing payment from the Real Estate Recovery Fund which are entered within ninety (90) days of the filing of this Stipulation not exceed the maximum liability of the Real Estate Recovery Fund set forth in Section 467-24 of the Hawaii Revised Statutes.

2. If the sum of the Orders directing payment from the Real Estate Recovery Fund which arise within ninety (90) days of this Stipulation exceeds the maximum liability above-mentioned, the Plaintiff's claim shall be reduced to an amount equal to the remainder of the liability of the Real Estate Recovery Fund multiplied by the ratio of his claim over the sum of all Orders directing payment from the Real Estate Recovery Fund which are filed from this Stipulation to ninety (90) days from the filing of this Stipulation.

departure in this case. Like Gakiya, the Yamamuras suffered serious financial injury as a result of Hallmark's fraud and misrepresentation, and like Gakiya, they sought compensation from the Fund's limited resources. The Yamamuras submitted their order directing payment from the Fund on May 31, 1984, almost a month before the deadline, and there is every indication that they acted reasonably to comply with the letter and spirit of HRS § 467-18.

We note further that although the Yamamuras were not parties to the stipulation itself, their claims were also subject to apportionment with the other outstanding claims. Enforcing the stipulation as Gakiya requested would have left the Yamamuras with virtually no source of relief, a result we find exceedingly unfair.

Moreover, the stipulation at issue merely involves a matter of procedure. The lower court already had conditioned Gakiya's recovery upon apportionment with the other pending claims; the stipulation simply set forth a mechanism for carrying out the order. Under the circumstances, it does not appear that the agreed ninety-day limit for considering claims had any bearing on Gakiya's substantive rights. *See Graen's Mens Wear v. Stille-Pierce Agency,* 329 N.W. 2d 295, 300 (Iowa 1983); *Lillard Pipe and Supply, Inc. v. Bailey,* 387 P.2d 118, 121-22 (Okla. 1963); *Thayer v. Federal Life Insurance Co.,* 217 Wis. 282, 285, 258 N.W. 849, 850 (1935); Annot., 161 A.L.R. 1161, 1186-87 (1946).

We also fail to see how Gakiya was prejudiced. He was fully aware of the outstanding claims, and he knew that these claims were moving through the legal process required to obtain payment from the Fund.

Therefore, we find that by including the Yamamuras' claims in the *pro rata* distribution, the trial court acted properly to avoid what otherwise would have been a miscarriage of justice. Consequently, we find that no abuse of discretion occurred.

Affirmed.

*Russell S. Kato* and *Corinne S. Yee* on the briefs for Plaintiff-Appellant.

*Sidney K. Ayabe* and *Paul T. Yamamura* on the brief for Defendant-Appellee.