Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000747
04-MAR-2016
08:06 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---

NEIL YONEJI, Successor Trustee of the Mitsuo Yoneji
Revocable Trust dated November 27, 1985 and NEIL YONEJI and
CLAIRE YONEJI, individually and as Trustees of the Yoneji
Revocable Family Trust Dated August 31, 1998,
Plaintiffs-Appellants,
v.
MARY KAZUMI YONEJI,
Defendant-Appellee
v.
CHARLENE YONEJI, JOHN DOES 1-10, JANE DOES 1-10,
DOE PARTNERSHIPS, CORPORATIONS OR ENTITIES 1-20,
Defendants

---

MARY KAZUMI YONEJI,
Counterclaimant,
v.
NEIL YONEJI, Successor Trustee of the Mitsuo Yoneji
Revocable Trust dated November 27, 1985 and NEIL YONEJI and
CLAIRE YONEJI, as Trustees of the Yoneji Revocable
Family Trust Dated August 31, 1998,
Counterclaim Defendants

NO. CAAP-14-0000747

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 09-1-0282)

MARCH 4, 2016

FOLEY, PRESIDING J., LEONARD AND GINOZA, JJ.

OPINION OF THE COURT BY FOLEY, J.

Plaintiffs/Counterclaim Defendants/Appellants Neil Yoneji (**Neil**), Successor Trustee of the Mitsuo Yoneji Revocable Trust dated November 27, 1985 (**Mitsuo Trust**), and Neil and Claire Yoneji (**Claire**), individually and as Trustees of the Yoneji Revocable Family Trust Dated August 31, 1998 (**Yoneji Family Trust**) (together, **Yonejis**) appeal from the (1) May 1, 2013 "Order Granting in Part and Denying in Part Defendant Mary Kazumi Yoneji's Motion for Summary Judgment (Filed 2/26/13)" (**MSJ Order**), and (2) the March 7, 2014 "Amended Final Judgment," filed in the Circuit Court of the Fifth Circuit[1] (**circuit court**).

On appeal, the Yonejis argue the circuit court erred by

(1) granting-in-part the motion for summary judgment (**MSJ**) of Defendant/Counterclaimant/Appellee Mary Yoneji (**Mary**);

(2) excluding several pieces of evidence and testimony at trial;

(3) denying the Yonejis' request for a punitive damages instruction; and

(4) denying several of the Yonejis' requests for costs.

## I. BACKGROUND

This case involves the Mitsuo Trust, a family trust funded by rental income generated from two income-producing properties (together, **Properties**) originally owned by grantor, Mitsuo Yoneji (**Mitsuo**). The trust left interests in the Properties to Mitsuo's two sons, Neil and Owen Yoneji (**Owen**), and any children Mitsuo's sons may have. Neil was married to Claire. Owen was married to Defendant Charlene Yoneji (**Charlene**) and had one child, Mary. Owen passed away before the start of the Yonejis' lawsuit.

The Properties were co-owned by four family trusts in varying amounts: the Mitsuo Trust, the Revocable Trust of Owen Kazuo Yoneji, dated January 11, 1994 (**Owen Trust**), the Revocable Trust of Charlene Tsuruko Yoneji, dated January 11, 1994

---

[1] The Honorable Kathleen N.A. Watanabe presided.

(**Charlene Trust**), and the Yoneji Family Trust. All profits and expenses related to the Properties were handled through a single trust bank account at the First Hawaiian Bank (**FHB**), which operated under the Mitsuo Trust (**Mitsuo Trust Account**).

On October 26, 2009, the Yonejis filed a Complaint alleging that Mary and Charlene improperly emptied the Mitsuo Trust Account, and wrongfully redirected the rental income from the Properties co-owned by the various family trusts to Mary in her personal capacity. The Yonejis alleged that Mary was liable for conversion, constructive fraud, conspiracy, prima facie tort, unjust enrichment, and constructive trust. Specifically, the Yonejis alleged:

> 15. On April 11, 2008, [Mary] wrote a check drawn on FHB Account No 30-069056 in the amount of $67,031.14 to [FHB] which on the same day issued an Official Bank Check payable in the same amount to [Charlene], Mary's mother. The Official Bank Check indicated that [Mary] had purchased same "for [Owen] & [Neil]."
>
> 16. [Neil] did not authorize the April 11, 2008 disbursement of funds from the Mitsuo Trust checking account.
>
> 17. On April 28, 2008, [Mary] wrote a counter check drawn on FHB Account No 30-069056 in the amount of $85,081.99 payable to [FHB] which on the same day, issued an Official Bank Check payable in the same amount to [Owen]. The Official Bank Check indicated that [Mary] had purchased the same for (or on behalf of) the Mitsuo Trust.
>
> 18. [Neil] did not authorize the April 28, 2008 disbursement of funds from the Mitsuo Trust checking account.
>
> 19. After April 28, 2008, no further rent deposits were made at any financial institution for the benefit of the Mitsuo Trust. Mary collected in excess of Twenty-Five Thousand Dollars ($25,000.00) in rents from the tenants occupying [Properties] individually, or on behalf of [Owen], individually until [Owen] died in the Fall of 2008.
>
> 20. After Owen's death, [Mary] held herself out as the individual owner of the [Properties], and instructed the tenants of the [Properties] to make rent payments to her individually, and received certain rent payments from certain tenants, payable to her individually.
>
> 21. Moreover, [Mary] wrongfully failed and refused to allow [Neil] access to either of the [Properties].

On December 22, 2009, Mary and Charlene filed their Answer.

On May 1, 2012, the circuit court approved a

"Stipulation for Appointment of Special Master" (**Stipulation**). Both parties had stipulated to the use of a Special Master to resolve the following issues:

> 1. With respect to the [Properties], an accounting of all loans, sales, distributions, revenues, expenses, received, spent, used and/or withdrawn by any one or more or the Parties during the period March 1, 2008 to the present ("Subject Period"); and
>
> 2. With respect to the management of the [Properties] for the Subject Period, any discovered improprieties or mismanagement (diversion or non-reporting of income, improper expenses, improper distributions, withdrawals, etc.) including without limitation, the dates, the parties involved and the amount of any loss.

The Special Master was tasked with

> 1. [Conducting] an audit of the assets, revenues, and expenses of the [Properties] from March 1, 2008 to present.
>
> 2. [Determining] the interests of the co-owners of the [Properties] and their past and present entitlement to profits and responsibility for expenses.
>
> 3. [Determining] the final account among the co-owners, taking into consideration all distributions and the proceeds/credit from the sale of the [Properties].
>
> 4. [Determining] the parties' rights to the amounts related to the [Properties] held, in custody and/or control by any of the parties and the clerk of the Court.

The parties stipulated:

> 6. Upon completion of the investigation, the Special Master shall circulate a proposed report, entertain comments thereto, and make a final report to the [circuit court] including findings and recommendations determining accounts as set forth above. After filing of the final report, the parties shall have an opportunity to object to any portion of the report before the [circuit court] adopts findings and issues a judgment. The [circuit court] shall determine any whether there are any genuine issues of material fact to be determined by the trier of fact.

All parties also agreed that "the trier of fact shall rely on the report of the Special Master in determining the amounts, if any, owed by and between all parties in the above entitled action, subject to their determination of any disputed genuine issue of material fact (as set forth by the [circuit court])." The Stipulation provided that fees and costs associated with the Special Master would be distributed as follows:

10. The fees and costs associated with the appointment of the Master shall be finally determined by agreement or by Court Order, provided that any required advance for such fess [sic] and cost shall be made (without prejudice) as follows: 42.5% by [Yoneji Family Trust], 42.5% by [Owen Trust and Charlene Trust] and 15% by the Mitsuo Trust. For purposes of the Master's timekeeping, the Master shall keep time for his or her analysis for matter from March 1, 2008 to August 15, 2009, separate from his or her analysis from August 15, 2009, to the present.

On July 30, 2012, the circuit court issued its "Order Setting Trial Date," ordering all exhibits to be delivered to the circuit court and served by March 8, 2013.

## A. Motion for Summary Judgment

On February 26, 2013, before the March 8, 2013 deadline to deliver all exhibits to the circuit court, Mary filed a motion for summary judgment (**MSJ**) on the Yonejis' conversion, constructive fraud, conspiracy, prima facie tort, unjust enrichment, and constructive trust claims. Mary also requested that the court grant summary judgment in her favor as to the claims brought in Neil and Claire's individual capacities, arguing that "they have no ownership interest to the Properties in their individual capacities." On March 25, 2013, the Yonejis filed their opposition to Mary's MSJ (**Opposition to MSJ**).

On April 2, 2013, the circuit court held a hearing on Mary's MSJ, where it granted in part and denied in part Mary's request for summary judgment. The circuit court denied Mary's request for summary judgment as to the Yonejis' conversion and unjust enrichment claims, pending the receipt of the Special Master's report holding:

The Court is granting in part and denying in part [Mary's MSJ]. In particular, as to each specific count, the Court again pending the receipt of the final report of the master finds that there are genuine issues of material fact with respect to whether Mary withdrew more money than she was authorized to withdraw.

And so, summary judgment is denied on the issue of the conversion. As to constructive fraud, conspiracy, prima facia [sic] tort and constructive trust, the Court finds that there are no genuine issue [sic] of material fact, and the Court is granting summary judgment in [Mary's] favor. As to the issue of unjust enrichment, just as the Court is waiting on the final report of the master, and there is issue [sic] of whether Mary withdrew more than she was authorized to withdraw, the Court finds that there are

5

genuine issue [sic] of material facts.

In its MSJ Order filed May 1, 2013, the circuit court reduced its decision to a written order granting summary judgment in Mary's favor on the Yonejis' claims for constructive fraud, conspiracy, prima facie tort, and constructive trust and denying summary judgment as to the Yonejis' conversion and unjust enrichment claims. The circuit court also awarded Mary $38,158.05 in attorneys' fees and $6,173.74 in costs because Neil and Claire brought claims in their individual capacities.

B.  Motion in Limine

On March 4, 2013, in preparation for trial,[2] Mary filed a motion in limine to exclude testimony of Kent Tanigawa (**Tanigawa**), a witness for the Yonejis, and any reference to a quitclaim deed that allegedly deeded the Charlene Trust and Owen Trust interests in the Properties to Tanigawa. Mary's motion in limine argued that Tanigawa should not be permitted to testify during trial because the matter to which he was to speak "[was] not relevant and ha[d] no probative value in proving that Defendants Mary and Charlene withdrew $152,113.13 from the one single Mitsuo Trust bank account in April 2008."

The Yonejis' opposition to Mary's motion in limine alleged that on December 10, 2010, after an apparent partition action and after the Yonejis had filed their Complaint, Mary executed a quitclaim deed to Tanigawa for a collective 42.5% interest in the Properties from the Charlene Trust and Owen Trust. The Yonejis alleged that the transfer of those interests contravened a previously confirmed sale of the Properties to Neil. The Yonejis alleged that Neil, as trustee of the Yoneji Family Trust, was supposed to close escrow on the sale of the Properties by March 30, 2011, but the Yonejis could not close as planned because they had to wait for Mary to execute another quitclaim deed transferring title from Tanigawa back to the

---

[2]     The circuit court held a trial on the Yonejis' remaining conversion and unjust enrichment claims in 2013 on April 22-26, April 29-30, and May 1.

Charlene Trust and Owen Trust. The Yonejis alleged that the delay resulted in two months worth of missed rent revenue from the Properties that should have been included in the damages calculations.

On April 17, 2013, the circuit court held a hearing on Mary's motion in limine and orally granted her motion, finding that Tanigawa's testimony and evidence of the quitclaim deed were irrelevant to the current proceedings. On April 24, 2013, the circuit court entered a written order granting Mary's motion in limine to exclude Tanigawa's testimony.

**C. Special Master's Report and Testimony**

On April 10, 2013, the Special Master issued his report. On April 15, 2013, the Yonejis filed a "Request for Judicial Notice of the Report of Special Master" (**Request for Judicial Notice**) to have the report admitted into evidence. Shortly thereafter, and in adherence with the stipulated procedure for objections to the Special Master's report, Mary filed an objection to the report on April 16, 2013, claiming (1) "[t]he Court should use the 'Available Cash Balance' on Page 11 of the Final Report as the Special Master has allocated the monies to each of the four owners based on their pro rata ownership interest in the Properties as the original basis before applying any credits or debits to any person or party"; (2) "the Final Report fails to address Mary's Counterclaim"; and (3) "the Final Report incorrectly states that Mary's attorney is holding $152,772.46, which is incorrect, as it has been deposited with the Court."

At the April 22, 2013 hearing, the circuit court considered and then denied the Request for Judicial Notice because (1) the Yonejis' request was an improper subject for judicial notice and (2) Mary objected to the introduction of the report.[3] During the hearing, the circuit court also determined

---

[3] We note that following the April 17, 2013 hearing on Mary's motions in limine, the circuit court indicated that the Special Master would be a witness at trial and his report would be taken into evidence.

that Special Master, Carleton Williams (**Special Master Williams**), would not be allowed to testify during the Yonejis' case-in-chief because the Yonejis did not name him as a witness. The circuit court did instruct, however, that the Yonejis were still free to call Special Master Williams as a rebuttal witness during trial. On April 24, 2013, the circuit court filed its "Order Denying Plaintiffs' Request For Judicial Notice of Report of Special Master (Filed 4/15/13)."

At the April 25, 2013 hearing, the Yonejis again attempted to introduce the Special Master's report into evidence by orally requesting that the circuit court adopt the report. The circuit court took the matter under advisement, but never issued a ruling on the Yonejis' request.

On April 29, 2013, the Yonejis requested to introduce Special Master Williams as a rebuttal witness. The court denied the Yonejis' request, reasoning the following:

> The Court, considering the stipulation for appointment of a special master, the Court noting that the [Yonejis] have not named [Special Master Williams] as a witness, and the Court noting the expert testimony that has already been received by way of exhibits and testimony, the Court is denying the [Yonejis'] request to call [Special Master Williams] as the rebuttal witness.

The circuit court specifically indicated that its decision to not allow Special Master Williams to testify was

> based on what I have pointed out to the parties. It's based on the fact that [Special Master Williams] is not named as [Yonejis'] witness. It's based on the fact that the special master was intended to be a neutral party.
>
> It's also based on the fact that counsel have had the benefit of reviewing the final report by the master and that this has provided guidance to you, and it's based on what's provided in [Hawai'i Rules of Civil Procedure (**HRCP**)] Rule 53.

The trial then proceeded without the Special Master's report and without the testimony from Special Master Williams.

**D. Third Check for $16,384.20**

On April 15, 2013, the Yonejis filed a "Motion for Leave to Amend Complaint" (**Motion to Amend Complaint**) in order to amend their original October 26, 2009 Complaint to include facts pertaining to an additional $16,384.20 check from April 14, 2008,

8

which the Yonejis did not include in their original Complaint. In their Motion to Amend Complaint, the Yonejis alleged, *inter alia*:

> 19. On April 14, 2008, [Mary] wrote a counter check drawn on the bank account in the amount of $16,384.20 Payable to [FHB] which, on the same day, issued an Official Bank Check payable in the same amount to [Owen] in the same amount, which Official Bank Check was deposited in [Mary's] individual bank account on Kaua'i Government Employee's [Federal Credit Union].

The Motion to Amend Complaint alleged that the Yonejis did not plead evidence of the third check for $16,384.20 because they did not know about the check when they filed their original Complaint and only learned of the third check "[d]uring the course of discovery[.]" The Yonejis did not indicate the exact date on which they learned of the third check. On April 17, 2013, Mary filed her opposition.

On April 23, 2013, the Yonejis attempted to admit the check in to evidence to refresh Mary's recollection during her cross-examination. Mary testified that she prepared two official bank checks from the Mitsuo Trust Account in the amounts of $67,031.14 and $85,081.99. The Yonejis repeatedly asked Mary whether she made any other withdrawls from the Mitsuo Trust Account in April 2008. Mary indicated that she "[could not] recall at [that] time." The Yonejis attempted to refresh Mary's recollection by introducing the third check for $16,384.20 into evidence. Mary's counsel objected based on the circuit court's denial of the Yonejis' Motion to Amend Complaint.[4] The circuit court sustained Mary's objection. The Yonejis argued that the check was relevant because Mary claimed that she could not remember whether there were any other withdrawals. The Yonejis argued that "justice require[d] that [they] at least put it in evidence and let the jury decide." The circuit court sustained Mary's objection.

---

[4] Although the circuit court entered its written order denying the Yonejis' Motion to Amend Complaint on April 24, 2013, the written order states that it previously denied the Yonejis' Motion to Amend Complaint on April 17, 2013.

9

On April 24, 2013, the circuit court entered its written order denying the Yonejis' Motion to Amend Complaint.

On April 25, 2013, the Yonejis again attempted to admit testimony related to the third check but the circuit court refused to allow the testimony. While on direct examination, the Yonejis' counsel questioned Neil about the amounts of the checks that Mary had withdrawn from the Mitsuo Trust Account. As Neil began to list the amounts, Mary's counsel preemptively objected, claiming that "[Neil] want[ed] to mention the $16,384.20, which the Court denied." Unlike previous attempts to admit the check, the Yonejis claimed that the testimony of the third check went to Mary's modus operandi and credibility, and that "Mary had done this twice, and this is the third withdrawl." The Yonejis argued that they should be allowed to amend their Complaint to include evidence of the third check, pursuant to HRCP Rule 15, which allows a party to amend their Complaint at trial. The circuit court sustained Mary's objection.

**E. Punitive Damages Instruction**

On April 29, 2013, after the close of all evidence and before the submission of the case to the jury, Mary made an oral motion for judgment as a matter of law pursuant to HRCP Rule 50 as to the Yonejis' punitive damage claims. Mary argued the circuit court should grant judgment as a matter of law as to the Yonejis' punitive damage claim because (1) the Yonejis' Complaint did not properly plea punitive damages and (2) the Yonejis failed to present evidence as to whether Mary acted maliciously, wantonly, or willfully to warrant a punitive damages instruction. In response, the Yonejis orally moved to amend their Complaint so to conform to the evidence, under HRCP Rule 15. The circuit court orally granted in part Mary's request for judgment as a matter of law as to the Yonejis' punitive damages claim, finding that "[t]here is no legally sufficient evidentiary basis for a reasonable jury to find in favor of this claim[.]" The circuit court also denied the Yonejis' HRCP Rule 15 request to amend their Complaint. On May 1, 2013, the circuit court reduced its

10

decision to a written "Order Granting in Part and Denying in Part Defendant Mary Kazumi Yoneji and Joined Claimant Mary Kazumi Yoneji, Successor Trustee of the Revocable Trust of Owen Kazuo Yoneji Dated January 11, 1994 and the Revocable Trust of Charlene Tsuruko Yoneji Dated January 11, 1994's Motion for Judgment as a Matter of Law" (**Motion for JMOL**), which granted Mary's request for judgment as a matter of law as to the Yonejis' punitive damages claim. During the determination of jury instructions, the Yonejis agreed to withdraw its request for a punitive damages instruction but "only in view of the Court's determination of the motion for directed verdict."

On May 1, 2013, the jury found Mary liable for conversion and unjust enrichment. The jury found that Mary converted $129,645.59, representing the profits from rents that Mary retained. The jury also found that Mary was unjustly enriched in the amount of $74,546.21 with this amount subsumed in the overall amount of $129,645.59.

**F. Costs**

On June 18, 2013, the Yonejis filed their "Notice of Taxation and Costs" (**Request for Costs**). On June 21, 2013, Mary filed her objection. The Yonejis filed their opposition to Mary's objection on July 16, 2013.

The circuit court held a hearing on the Yonejis' Request for Costs on July 24, 2013, and denied the Yonejis' request pertaining to (1) Special Master William; (2) accounting consultants, the firm of Bowen Hunsaker Hirai and Reed Hayes; (3) mediator Keith Hunter; and (4) the interpreter fee and costs related to the February 22, 2013 deposition of Charlene. The circuit court reduced its ruling to an order on August 26, 2013.

**G. Final Judgment and Notice of Appeal**

On August 28, 2013, the circuit court entered its Final Judgment. The Final Judgment incorporated the jury's verdict against Mary, modified the jury award by allocating the award based on the percentage ownership of each trust (with a total of $74,546.21 to the Yonejis in their capacities as trustees), and

awarded costs to the Yonejis in the amount of $32,256.94.

On September 25, 2013, the Yonejis filed a timely notice of appeal in case no. CAAP-13-0003566, which this court dismissed for lack of appellate jurisdiction on January 10, 2014. On March 7, 2014, the circuit court entered its Amended Final Judgment. On April 7, 2014, the Yonejis filed a timely notice of appeal in this case.

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 56, 109 P.3d at 697 (internal citations and brackets omitted) (quoting Durette v. Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

The Hawai'i Supreme Court has set forth the following burden-shifting paradigm for situations where the non-movant bears the burden of proof at trial:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

12

> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

Ralston v. Yim, 129 Hawaiʻi 46, 56-57, 292 P.3d 1276, 1286-87 (2013) (quoting French v. Hawaii Pizza Hut, Inc., 105 Hawaiʻi 462, 470, 99 P.3d 1046, 1054 (2004)).

> [A] summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry his or her burden of proof at trial. Where the movant attempts to meet his or her burden through the latter means, he or she must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial. Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded.

Ralston, at 60-61, 292 P.3d at 1290-91 (citations and emphasis omitted).

## B. Award of Attorneys' Fees and Costs

> This court reviews a lower court's award of attorneys' fees for abuse of discretion. Allstate Ins. Co. v. Pruett, 118 Hawaiʻi 174, 179, 186 P.3d 609, 614 (2008) (citation omitted). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (quoting Lepere v. United Pub. Workers, 77 Hawaiʻi 471, 473, 887 P.2d 1029, 1031 (1995)). In other words, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantival detriment of a party litigant." Id. (quoting TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 253, 990 P.2d 713, 723 (1999)).

Hart v. Ticor Title Ins. Co., 126 Hawaiʻi 448, 455, 272 P.3d 1215, 1222 (2012) (brackets in original).

## C. Admission of Evidence

In State v. West, 95 Hawaiʻi 452, 24 P.3d 648 (2001), the Hawaiʻi Supreme Court stated:

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

13

Id. at 456-57, 24 P.3d at 652-53 (quoting Kealoha v. Cnty. of Hawaii, 74 Haw. 308, 319-20, 844 P.2d 670, 676 (1993)).

"Under the right/wrong standard, [the appellate court] examine[s] the facts and answer the question without being required to give any weight to the trial court's answer to it." State v. Timoteo, 87 Hawai'i 108, 113, 952 P.2d 865, 870 (1997) (citation and internal quotation marks omitted).

"A trial court's determination that evidence is 'relevant' within the meaning of [Hawaii Rules of Evidence (**HRE**)] Rule 401 (1993) is reviewed under the right/wrong standard of review." State v. St. Clair, 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003). In contrast,

> Evidentiary decisions based on HRE Rule 403 [(1993)], which require a "judgment call" on the part of the trial court, are reviewed for an abuse of discretion. HRE 404 [(1993)] represents a particularized application of the principle of HRE 403 (see Commentary to HRE 404), and we will employ the same abuse of discretion standard of review.

State v. Richie, 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998) (citations, internal quotation marks, and footnotes omitted).

## D.   Judgment as a Matter of Law

> It is well settled that a trial court's rulings on motions for judgment as a matter of law are reviewed *de novo*.
>
> > When we review the granting of a [motion for judgment as a matter of law], we apply the same standard as the trial court.
> >
> > A [motion for judgment as a matter of law] may be granted only when after disregarding conflicting evidence, giving to the non-moving party's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor.
>
> Miyamoto v. Lum, 104 Hawai'i 1, 6-7, 84 P.3d 509, 514-515 (2004) (internal citations omitted).

Aluminum Shake Roofing, Inc. v. Hirayasu, 110 Hawai'i 248, 251, 131 P.3d 1230, 1233 (2006).

## E.   Costs

> [The appellate] court reviews the trial court's grant or denial of attorneys' fees and costs under the abuse of discretion standard. [Price v. AIG Hawai'i Ins. Co., 107

14

Hawai'i 106, 110, 111 P.3d 1, 5 (2005)] (citation omitted).

> The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Id. (citation omitted).

Enoka v. AIG Hawaii Ins. Co., 109 Hawai'i 537, 544, 128 P.3d 850, 857 (2006).

## III. DISCUSSION

### A. Motion for Summary Judgment

#### 1. Constructive Fraud

The Yonejis contend the circuit court erred in granting summary judgment in favor of Mary as to their constructive fraud claim. "Constructive fraud is defined as an act done or omitted which is construed as a fraud by the court because of its detrimental effect upon public interests and public or private confidence, even though the act is not done or omitted with an actual design to perpetrate actual fraud or injury." Wolfer v. Mut. Life Ins. Co. of New York, 3 Haw. App. 65, 76, 641 P.2d 1349, 1357 (1982). "Constructive fraud is characterized by the breach of fiduciary or confidential relationship." Aames Funding Corp. v. Mores, 107 Hawai'i 95, 104, 110 P.3d 1042, 1051 (2005) (quoting Honolulu Fed. Sav. & Loan Ass'n v. Murphy, 7 Haw. App. 196, 201 n.6, 753 P.2d 807, 811 n.6 (1988)).

In Mary's MSJ, she contended there was no genuine issue of material fact as to the Yonejis' constructive fraud claim because "[t]here is no special relationship or confidential relationship between [Mary] and [the Yonejis] which would impose a fiduciary duty on [Mary] in this case." Mary specifically claimed that "[she] is not a trustee of the Mitsuo Trust, nor a trustee of the Yoneji Family Trust."

Mary's argument that she is not liable because she is not a trustee is not supported by law. According to Wolfer, Mary did not need to be a trustee in order to be liable for constructive fraud. See Wolfer, 3 Haw. App. at 76-77, 641 P.2d

15

at 1357. In <u>Wolfer</u>, this court opined that

> Constructive fraud often exists where the parties to a transaction have a special confidential or fiduciary relation which affords the power and means to one to take undue advantage of, or exercise undue influence over, the other.
>
> Relationships between trustee and beneficiary, principal and agent, and attorney and client are familiar examples in which the principle of fiduciary or confidential relationship applies in its strictest sense. <u>Its operation, however, is not limited to dealings between parties standing in such relations, but extends to all instances when a fiduciary or confidential relation exists as a fact, in which there is confidence reposed on one side and a resulting superiority and influence on the other</u>.

<u>Id.</u> (emphasis added). Whether a fiduciary or confidential relationship exists "depends on evidentiary facts and the weight to be accorded thereto." <u>Id.</u> at 77, 641 P.2d at 1357.

Mary's MSJ presented no evidence that would negate the Yonejis' claim that she had a confidential relationship with them nor did Mary show that the Yonejis would be unable to place necessary proof in the record at trial. See <u>Ralston</u>, 129 Hawaiʻi at 60-61, 292 P.3d at 1290-91. Therefore, Mary failed to satisfy her initial burden and summary judgment was not proper as to the Yonejis' constructive fraud claim.

### 2. Conspiracy

The Yonejis claim that the circuit court erred in granting summary judgment in Mary's favor as to their conspiracy claim. "Generally speaking, 'the accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'" <u>Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co.</u>, 91 Hawaiʻi 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999), <u>superseded by statute on other grounds as stated in</u> <u>Davis v. Four Seasons Hotel Ltd.</u>, 122 Hawaiʻi 423, 430, 228 P.3d 303, 310 (2010); <u>see</u> <u>Menashe v. Bank of New York</u>, 850 F. Supp. 2d 1120, 1138 (D. Hawaiʻi 2012). "Because 'there can be no civil claim based upon a conspiracy alone,' a plaintiff must allege an underlying actionable claim." <u>Menashe</u>, 850 F. Supp. 2d

at 1138 (internal quotation marks omitted) (quoting Weinberg v. Mauch, 78 Hawai'i 40, 49, 890 P.2d 277, 286 (1995); Ellis v. Crockett, 51 Haw. 45, 57, 451 P.2d 814, 822-23 (1969) (holding that the plaintiffs' failure to allege an underlying claim of deceit precluded them from alleging conspiracy to deceive).

Mary's MSJ contended that the Yonejis "cannot show that [Mary and Charlene] acted in concert for an unlawful purpose or committed a criminal act" because Mary was an authorized signer on the Mitsuo Trust account which contained the $152,113.13. The Hawai'i Supreme Court has held that, when moving for summary judgment, the "moving party has the initial burden of identifying those portions of the record demonstrating the absence of a genuine issue of material fact." Ralston, 129 Hawai'i at 59, 292 P.3d at 1289. "[A] summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry his or her burden of proof at trial." See id. at 60-61, 292 P.3d at 1290-91. Mary's MSJ presented no evidence to negate the Yonejis' claim that she worked in concert with Charlene nor did Mary show that the Yonejis would be unable to prove that at trial. Instead, Mary improperly placed the burden of proof on the Yonejis. See id. Mary failed to satisfy her initial burden and the circuit court erred in granting summary judgment in Mary's favor as to the Yonejis' conspiracy claim.

### 3. Prima Facie Tort

The Yonejis also claim that the circuit court erred in granting summary judgment in favor of Mary as to their prima facie tort claim. We previously held in Yoneji v. Yoneji, 2015 WL 4604915, 354 P.3d 1160 (Haw. App. July 31, 2015) (No. CAAP-14-0000496) (**Yoneji I**) that a prima facie cause of action is only available to a plaintiff in "cases that are factually similar to Giuliani [v. Chuck, 1 Haw. App. 379, 386, 620 P.2d 733, 738 (1980)] and where no other well-recognized causes of action are pled to address the alleged harm." See Yoneji, 2015 WL 4604915

17

at *9, 354 P.3d at 1169.

The Yonejis' prima facie tort claim states:

**COUNT IV**
**PRIMA FACIE TORT**

39. Paragraphs 1 through 38 are incorporated herein by reference as though fully realleged hereat.

40. The foregoing acts and omissions of [Mary and Charlene], acting in concert and/or with one or more Doe Defendants, were unjustified and performed with intent to cause injury to the interests of [the Yonejis].

41. Additionally, [Mary and Charlene] acting in concert and/or with one or more Doe Defendants, are jointly and severally liable for damages suffered by [the Yonejis] as a result of the aforementioned unjustified acts.

42. As a direct and proximate result of the aforesaid prima facie tort, [the Yonejis] have suffered and are entitled to recover compensatory damages from the above-named [Mary and Charlene] and/or one or more Doe Defendants, including special, general, consequential and punitive damages in an amount to be proven at trial, together with an award of reasonable attorneys' fees, costs and interest.

The alleged harm to the Yonejis could be remedied by their conversion and conspiracy claims against Mary. Therefore, under this court's holding in <u>Yoneji I</u> and <u>Giuliani,</u> the Yonejis' prima facie tort claim must fail as a matter of law.

## 4. Constructive Trust

The Yonejis claim the circuit court erred in granting summary judgment in favor of Mary as to their constructive trust claim. "A constructive trust will be imposed where the evidence is clear and convincing that one party will be unjustly enriched if allowed to retain the entire property." <u>Maria v. Freitas</u>, 73 Haw. 266, 274, 832 P.2d 259, 264 (1992).

Mary's MSJ argued that summary judgment was appropriate as to the Yonejis' constructive trust claim because "Mary [did] not have possession of the $152,113.13 since [Mary] ha[d] interpled $152,772.46 with the Court." In response, the Yonejis claimed that a question of fact remained as to whether Mary interpled with the circuit court all money removed from the Mitsuo Trust Account. At the time Mary submitted her MSJ, all parties were still waiting for a stipulated report from a Special

18

Master who was tasked with

1.  [Conducting] an audit of the assets, revenues, and expenses of the [Properties] from March 1, 2008 to present.

2.  [Determining] the interests of the co-owners of the [Properties] and their past and present entitlement to profits and responsibility for expenses.

3.  [Determining] the final account among the co-owners, taking into consideration all distributions and the proceeds/credit from the sale of the [Properties].

4.  [Determining] the parties' rights to the amounts related to the [Properties] held, in custody and/or control by any of the parties and the clerk of the Court.

Both parties had agreed that "the trier of fact shall rely on the report of the Special Master in determining the amounts, if any, owed by and between all parties in the above entitled action, subject to their determination of any disputed genuine issue of material fact (as set forth by the Court)[.]" The circuit court denied summary judgment on the Yonejis' conversion and unjust enrichment claims, pending the receipt of the final report from the Special Master. Given the pending report from the Special Master, Mary's MSJ failed to show that the Yonejis would have been unable to prove their constructive trust claim at trial and the circuit court erred in granting summary judgment in Mary's favor. See Ralston, 129 Hawai'i at 61, 292 P.3d at 1291.

**B. Attorneys' Fees and Costs**

The Yonejis contend the circuit court erred in awarding Mary attorneys' fees and costs. In the MSJ Order, the circuit court found that pursuant to Hawaii Revised Statutes (**HRS**) § 607-14.5 (Supp. 2014), the Yonejis' claims for conversion, constructive fraud, conspiracy, prima facie tort, and unjust enrichment, and constructive trust, brought in their individual capacities, were frivolous and not reasonably supported by the facts and the law. The circuit court awarded reasonable attorneys' fees of $38,158.05 and costs of $6,173.74 in favor of Mary and against the Yonejis.

HRS § 607-14.5(a) provides:

§607-14.5 **Attorneys' fees and costs in civil**

19

**actions.** (a) In any civil action . . . where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order . . . a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim . . . . was frivolous . . . . .

See Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawai'i 292, 300, 972 P.2d 295, 303 (1999). "A frivolous claim has been defined as 'a claim so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required.'" Id. (citing Coll v. McCarthy, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991)). The Hawai'i Supreme Court has recently stated that "[a] finding of frivolousness is a high bar; it is not enough that a claim be without merit, there must be a showing of bad faith." Tagupa v. VIPDesk, 135 Hawai'i 468, 479, 353 P.3d 1010, 1021 (2015).

HRS § 607-14.5(b) and (c) instruct the following:

**§607-14.5  Attorneys' fees and costs in civil actions.**

(b) . . . In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c). If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.

(c) A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous. If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys' fees and costs based on those claims or defenses under this section.

Mary's MSJ argues that the Yonejis' claims in their individual capacities were frivolous because neither Claire nor Neil owned the Properties in their individuals capacities and thus lacked standing. Although the Yonejis' claims in their individual capacities may have not been supported by the facts or the law, the facts do not indicate that the Yonejis acted in bad

20

faith.

Prior to Mary's MSJ, Mary had not requested that the Yonejis withdraw their individual claims. See HRS § 607-14.5(c). In their Opposition to MSJ, the Yonejis took it upon themselves to withdraw all claims made in their individual capacities. At the April 2, 2013 hearing on Mary's MSJ, the Yonejis' counsel indicated that Neil included claims in his individual capacity because he had to file the lawsuit with his own money as there were no funds in the Mitsuo Trust Account for him to do so in his capacity as a trustee. The Yonejis' counsel indicated that they made the decision to withdraw the individual claims after Neil had been repaid his out-of-pocket expenses for cost associated with the lawsuit because it was no longer necessary for him or Claire to pursue those claims in their individual capacities. In addition, the Yonejis' counsel indicated that he meant to speak to Mary's counsel about withdrawing the individual claims at Neil's deposition and the settlement conferences, but that the conversation "never got specific enough to get to that point." There is no evidence in the record that the Yonejis pursued their individual claims in bad faith. Therefore, the circuit court abused its discretion in awarding Mary attorneys' fees and costs pursuant to HRS § 607-14.5.

## C. Evidence

### 1. Special Master's Report and Testimony

The Yonejis contend the circuit court erred in excluding the testimony of Special Master Williams at trial. At a hearing on April 17, 2013, the court indicated its understanding to the parties that the Special Master's report would be an exhibit and Special Master Williams would testify during trial. At a proceeding several days later the circuit court changed its position and instructed the parties that Special Master Williams could not testify in the Yonejis' case-

21

in-chief,[5] but noted he might be allowed to testify as a rebuttal witness if the Yonejis appropriately addressed the need for a rebuttal witness. Subsequently, the circuit court at trial prevented the Yonejis from having Special Master Williams testify as a rebuttal witness, citing to its previous ruling. Although the parties stipulated to the use of a Special Master and the circuit court signed off on the stipulation, the circuit court continuously denied the Yonejis' repeated attempts to admit the Special Master's report into evidence. The circuit court appears to not have admitted the Special Master's report based on the belief, *inter alia*, that the report was to only have "provided guidance" to the parties and it was somehow inconsistent with HRCP Rule 53 to have the report relied upon by the trier of fact.

"Parties are ordinarily bound by their stipulations, although we have allowed stipulations to be set aside in order to prevent manifest injustice." <u>Office of Disciplinary Counsel v. Lau</u>, 79 Hawaiʻi 201, 204, 900 P.2d 777, 780 (1995), as amended (Sept. 14, 1995). Here, the Yonejis stipulated to the use of a Special Master to resolve the following issues:

> 1. With respect to the Subject Properties, an accounting of all loans, sales, distributions, revenues, expenses, received, spent, used and/or withdrawn by any one or more of the Parties during the period March 1, 2008 to the present ("Subject Period"); and
>
> 2. With respect to the management of the Subject Properties for the Subject Period, any discovered improprieties or mismanagement (diversion or non-reporting of income, improper expenses, improper distributions, withdrawals, etc.) including without limitation, the dates, the parties involved and the amount of any loss.

The Stipulation itself contemplated that parties may disagree with the findings in the Special Master's report and provided the parties an opportunity to object. The stipulation specifically indicates that "[a]fter filing of the final report, the parties

---

[5] The circuit court reasoned that Special Master Williams could not testify in the Yonejis' case-in-chief because the Yonejis had not named him as a witness on their witness list. However, the Yonejis' witness list specifically indicates that "[The Yonejis] reserve the right to call any witness identified in [Mary's] witness list, but not identified herein." Mary's witness list names Special Master Williams as both a lay and an expert witness.

22

shall have an opportunity to object to any portion of the report before the Court adopts findings and issues a judgment." The Stipulation instructs that the court, considering the objections, "shall determine whether there are any genuine issues of material fact to be determined by the trier of fact." (Emphasis added.) The Stipulation further instructs that "the trier of fact shall rely on the Special Master in determining the amounts, if any, owed by and between all parties . . . subject to their determination of any disputed genuine issue of material fact (as set forth by the Court)." (Emphasis added.)

Here, the circuit court refused to adopt the findings of the Special Master report without determining what genuine issues of material facts remained for the trier of fact to determine. In fact, it appears that once Mary raised her initial objection to the report, the circuit court chose to ignore the stipulated Special Master report altogether.

A trial court is bound to follow the procedures set forth in a stipulation, unless there was a finding of manifest injustice. See Gakiya v. Hallmark Properties, Inc., 68 Haw. 550, 552, 722 P.2d 460, 462 (1986) (finding a manifest injustice that warranted departure from a stipulated agreement where the party seeking to enforce the stipulation was not prejudiced and party against whom the agreement was to be enforced was prejudiced). Given that the circuit court made no determination as to whether a manifest injustice existed, the court erred in deviating from the procedures set forth in the Stipulation.

Furthermore, a review of the record indicates that no such manifest injustice existed to warrant a departure from the procedures set forth in the Stipulation. In preparation for the trial, both parties had agreed to use a Special Master to determine complex issues of fact. The parties stipulated to the use of a Special Master after determining that

> the amounts owed by and between all parties in the above-entitled action is complex due to multiple ownership interests in the Subject Properties, the change in property management between the respective parties, alleged improper commingling/management, and review of numerous accounting, checking, [sic] account and other financial documents, bank

> statements and records, some of which are a part of the files and records herein and incorporated herein by reference[.]

See HRCP Rule 53.[6] The circuit court approved the Stipulation and even relied upon the pending Special Master's report to deny-in-part Mary's request for summary judgment.

The Yonejis relied upon the court-approved Stipulation and the circuit court's determination that the Special Master's report would be admitted into evidence to prepare for trial. "[C]ourts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them. Inherent powers of the court are derived from the state Constitution and are not confined by or dependent on statute." Doe v. Doe, 98 Hawai'i 109 144, 154-55, 44 P.3d 1085, 1095-96 (2002); Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994). "Trial courts

---

[6] HRCP Rule 53 controls references to Special Masters and provides:

**Rule 53. MASTERS.**

(a) **Appointment and Compensation.** The court in which any action is pending may appoint a special master therein. As used in these rules the word "master" includes a referee, an auditor, an examiner, and an assessor. The compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties or paid out of any fund or subject matter of the action, which is in the custody and control of the court as the court may direct. The master shall not retain the report as security for compensation; but when the party ordered to pay the compensation allowed by the court does not pay it after notice and within the time prescribed by the court, the master is entitled to a writ of execution against the delinquent party.

(b) **Reference.** A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

(c) **Powers.** The order of reference to the master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for filing of the master's report.

maintain discretion over various aspects of the proceedings before them." Doe, 98 Haw. at 155, 44 P.3d at 1096; see HRE Rule 611 (1993).[7] "However, the trial court's discretion 'is not unlimited . . . and must be balanced against the rights of the parties to present their cases on the merits.'" Barbee v. Queen's Med. Ctr., 119 Hawai'i 136, 155, 194 P.3d 1098, 1117 (App. 2008) (quoting Doe, 98 Haw. at 155 n.12, 44 P.3d at 1096 n.12).

Here, the circuit court's departure from the stipulated procedure unjustifiably infringed upon the Yonejis' rights to present their case and, thus, constituted prejudicial error. See Suddeth v. Knight, 314 S.E.2d 11, 14 (S.C. Ct. App. 1984) ("The trial judge's change of position regarding the effect of the Report in the middle of the trial substantially prejudiced [plaintiff's] presentation of his case."). We remand this case back to the circuit court with instructions to review the Special Master's report, considering any party objections to the report, and then identify any outstanding genuine issues of material fact to be determined by the trier of fact, pursuant to the parties' Stipulation. Should the court identify any outstanding genuine

---

[7] HRE Rule 611 provides:

> **Rule 611 Mode and order of interrogation and presentation.** (a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
>
> (b) Scope of cross-examination. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.
>
> (c) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily, leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

25

issues of material fact, the Special Master's report shall be admissible for consideration by the trier of fact.

A review of the procedural history indicates that the Yonejis requested that Special Master Williams testify at trial only after the circuit court refused to admit his report into evidence. To the extent that the circuit court did not follow the stipulated procedure, we need not address the issue of whether Special Master Williams should have been permitted to testify at trial.

## 2. Motion in Limine

The Yonejis contend the circuit court erred in excluding the testimony of Tanigawa and evidence of the quitclaim deed from Charlene and Owen Trusts to Tanigawa. The circuit court excluded the evidence after finding Tanigawa's testimony and all evidence of the quitclaim deeds irrelevant. However, the Yonejis claimed Tanigawa's testimony and evidence of the quitclaim deeds were relevant because "[a] portion of the Family Trust's damages is attributable to the rent revenue lost between the time the transaction transferring title to the Family Trust would have closed, but for Mary's transfer to Tanigawa."

Based on the facts in the record, Mary's alleged transfer of Charlene and Owen Trusts' property interests to Tanigawa occurred after the Yonejis filed their original Complaint and was the result of a legally separate partition action. The Yonejis thus could not have pled harm from the partition sale in their Complaint because the transfer to Tanigawa had not yet occurred. The harm caused by the delayed partition sale was not a "natural[] and necessar[y] result" from the legal wrong alleged (i.e., Mary's conversion of funds from the Mitsuo Trust Account and unjust enrichment) so as to constitute a basis for general damages, as the Yonejis claim. See Ellis, 51 Haw. at 50, 451 P.2d at 819.

"General damages are said to encompass all the damages which naturally and necessarily result from a legal wrong done." Id. By contrast, special damages are those damages that "do not

26

arise solely from the wrongful act itself, but rather depend on the circumstances peculiar to the infliction of each particular injury." Id. At best, the alleged harm that resulted from the partition delay was incidental to the overall harm alleged in the Yonejis' Complaint so as to constitute a basis for special damages. HRCP Rule 9(g) provides that "[w]hen items of special damage are claimed, they shall be specifically stated." Because the Yonejis did not plead special damages in their Complaint, they were not entitled to an award of special damages. See Ellis, 51 Haw. at 51, 451 P.2d at 819. Therefore, the circuit court did not err in concluding that Tanigawa's testimony and evidence of the quitclaim deed were not relevant to the issue of general damages in the Yonejis' lawsuit. See HRE Rule 401.[8]

### 3. Third Check for $16,384.20

The Yonejis claim the circuit court erred in excluding evidence of a third check by which Mary allegedly took funds from the Mitsuo Trust Account. The opening brief provides no legal argument in support of their contention. Instead, the Yonejis' opening brief merely alleges that "when the Yonejis attempted to introduce evidence related to the check at trial, the circuit court thwarted every attempt by them to do so."

Pursuant to Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7), appellate courts "will disregard [a] particular contention if the appellant makes no discernible argument in support of that position[.]" Kaho'ohanohano v. Dep't of Human Servs., State of Hawai'i, 117 Hawai'i 262, 297 n.37, 178 P.3d 538, 573 n.37 (2008) (citation and internal quotation marks omitted); see also HRAP Rule 28(b)(7)(2007) ("Points not argued may be deemed waived."). Pursuant to the Hawai'i Supreme Court's ruling in Marvin v. Pflueger, 127 Hawai'i 490, 280 P.3d 88 (2012),

---

[8]    HRE Rule 401 provides:

> **Rule 401.  Definition of "relevant evidence".**
> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

27

"noncompliance with Rule 28 does not always result in dismissal of the claims, and [appellate courts have] consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible." Marvin, 127 Hawai'i at 496, 280 P.3d at 94 (citations, internal quotation marks, ellipses and original brackets omitted). "This is particularly so where the remaining sections of the brief provide the necessary information to identify the party's argument." Id. Therefore, we will address the Yonejis' arguments on appeal to the extent discernible.

The Yonejis' Complaint alleged that Mary wrote two checks from the Mitsuo Trust Account without Neil's authorization and deposited the funds from the checks in an account to which Neil did not have access. The Complaint provided the following:

> 15. On April 11, 2008, [Mary] wrote a check drawn on FHB Account No 30-069056 in the amount of $67,031.14 to [FHB] which on the same day issued an Official Bank Check payable in the same amount to [Charlene], Mary's mother. The Official Bank Check indicated that [Mary] had purchased same "for [Owen] & [Neil]."
>
> 16. [Neil] did not authorize the April 11, 2008 disbursement of funds from the Mitsuo Trust checking account.
>
> 17. On April 28, 2008, [Mary] wrote a counter check drawn on FHB Account No 30-069056 in the amount of $85,081.99 payable to [FHB] which on the same day, issued an Official Bank Check payable in the same amount to [Owen]. The Official Bank Check indicated that [Mary] had purchased the same for (or on behalf of) the Mitsuo Trust.
>
> 18. [Neil] did not authorize the April 28, 2008 disbursement of funds from the Mitsuo Trust checking account.

On April 15, 2013, more than three years after filing their initial Complaint, the Yonejis filed a Motion to Amended Complaint, pursuant to HRCP Rule 15, which sought to include facts pertaining to a third check alleged issued on April 14, 2008. The Yonejis' requested amended complaint alleged, *inter alia*:

> 19. On April 14, 2008, [Mary] wrote a counter check drawn on the bank account in the amount of $16,384.20 Payable to [FHB] which, on the same day, issued an Official Bank Check payable in the same amount to [Owen] in the same amount, which Official Bank Check was deposited in [Mary's]

individual bank account on Kaua'i Government Employee's FCU.

Under HRCP Rule 15(a)(2), "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The "grant or denial of leave to amend under [HRCP] Rule 15(a) is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion." Keawe v. Hawaiian Elec. Co., 65 Haw. 232, 239, 649 P.2d 1149, 1154 (1982) (citation and internal quotation marks omitted). Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" Bishop Trust Co. v. Kamokila Dev. Corp., 57 Haw. 330, 337, 555 P.2d 1193, 1198 (1976) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

The Yonejis' Motion to Amend Complaint alleged that they did not plead evidence of the third check for $16,384.20 because they did not know about the check when they filed their Complaint and only learned of the third check "[d]uring the course of discovery." However, during the April 2, 2013 hearing on Mary's MSJ and before the Yonejis filed their Motion to Amend Complaint, the Yonejis cited to the third check in support of their unjust enrichment claim. When the circuit court asked why the Yonejis had not amended their original Complaint to include the third check, the Yonejis' counsel responded that "[HRCP] would allow us to amend the Complaint at trial if needed to comport with the evidence." Yonejis' co-counsel further elaborated that the Yonejis did not file a motion to amend complaint sooner because, "after years of not having any documents, we received numerous documents and weren't able to go through all of them in time to . . . file a motion to amend the complaint with all the other trial deadlines that had come up."

Based on the response from the Yonejis' counsel, it appears the Yonejis felt no urgency to amend their Complaint.

The record indicates the Yonejis did not file their Motion to Amend Complaint until a week before trial was scheduled to begin and after the circuit court's April 2, 2013 hearing on Mary's MSJ.

The Yonejis' Motion to Amend Complaint fails to provide any detail as to when they discovered the third check or what prevented them from discovering the third check sooner. Neil testified during trial that he had access to the financial information from the Mitsuo Trust Account. The Yonejis' Motion to Amend Complaint, however, provides no explanation for why Neil did not obtain information about a third check when they discovered the first two checks.

Given that the Yonejis did not exhibit due diligence in determining what funds were withdrawn from the Mitsuo Trust Account when they filed their original Complaint, failed to provide evidence of when they learned of the third check, and indicated an original intent to wait until trial to amend the Complaint, the Yonejis' conduct reasonably constituted an undue delay. See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 112, 176 P.3d 91, 111 (2008) (denying Plaintiff's motion to amend Complaint because Plaintiff unduly delayed proposing her additional claim). Therefore, the circuit court did not abuse its discretion by denying the Yonejis' Motion to Amend Complaint.

The Yonejis also attempted to admit evidence of the third check during trial. At an April 23, 2013 proceeding, the Yonejis attempted to admit the check in to evidence to refresh Mary's recollection during her cross-examination. The Yonejis argued that "justice require[d] that [they] at least put [the third check] in evidence and let the jury decide." At an April 25, 2013 proceeding, the Yonejis again attempted to admit testimony related to the third check as evidence of Mary's modus operandi, claiming that "Mary had done this twice, and this is the third withdrawal." The circuit court sustained both of Mary's objections to the Yonejis' attempted lines of questioning.

Given our holding that the circuit court did not err in denying the Yonejis' Motion to Amend Complaint to include the third check, we fail to see how the question of whether Mary wrote any other checks from the Mitsuo Trust Account was relevant to the issue of whether Mary was liable for conversion or unjust enrichment in regards to the original two checks. See HRE Rule 104 (1993).

Furthermore, under HRE Rule 404(b), although evidence of modus operandi is admissible, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Yonejis attempted to introduce evidence of the third check as conclusive evidence that Mary had deliberately removed funds from the account on three separate occasions. The Yonejis' attempted line of questioning is, therefore, not admissible under HRE Rule 404(b). In addition, given the minimal probative value of the proffered evidence as it related to modus operand, and the likelihood that the evidence would confuse the jury as to what issues were before them, testimony regarding the third check fails the HRE Rule 403[9] balancing test. Therefore, the circuit court did not err in sustaining Mary's objection and finding that evidence of the third check was not admissible evidence.

D. **Punitive Damages Jury Instruction**

The Yonejis argue the circuit court erred in denying the Yonejis' request to provide punitive damages jury instructions. Because we vacate and remand this case back to the circuit court, this point on appeal is moot.

E. **Costs**

The Yonejis argue on appeal that the circuit court

---

[9]      HRE Rule 403 provides:

> **Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

abused its discretion in denying several of the Yonejis' requests for costs. Because we vacate and remand this case back to the circuit court, there is no prevailing party for whom costs may be assessed. Nevertheless, we will address the Yonejis' points on appeal pertaining to the circuit court's denial of costs so to provide guidance to the circuit court on remand.

### 1. Charlene's Deposition Costs

The Yonejis claim that "the circuit court abused its discretion by failing to award deposition costs associated with the percipient witness [Charlene]." The circuit court granted the Yonejis' deposition transcript costs for all depositions, except for the $1,115.64 spent on the deposition of Charlene. The Yonejis argued that costs pertaining to Charlene's deposition were appropriate because, although Charlene was originally a named defendant in their lawsuit, she was also a pertinent witness to the Yonejis' lawsuit against Mary. The circuit court ultimately denied the Yonejis' request for Charlene's deposition costs because Charlene had been the prevailing party in her motion for summary judgment.

This court has held that "[w]here the prevailing party has taken the deposition, the cost of the original deposition may be taxed when it is deemed reasonable." Nani Koolau Co. v. K & M Const., Inc., 5 Haw. App. 137, 143, 681 P.2d 580, 586 (1984); See HRS §§ 624-35 (1993),[10] 607-9 (1993);[11] and HRCP Rule 54(d).[12] "A

_____

[10] HRS § 624-35 provides:

> **HRS §624-35 Costs.** The costs of depositions may be taxed in the bill of costs as provided by section 607-9.

[11] HRS § 607-9 provides:

> **§607-9 Cost charges exclusive; disbursements.** No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.
>
> All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and
> (continued...)

determination of reasonableness is within the discretion of the trial court and is dependent upon whether the deposition was necessarily obtained for use in the case." Nani Koolau, 5 Haw. App. at 144, 681 P.2d at 586 (citing Geldert v. State, 3 Haw. App. 259, 268, 649 P.2d 1165, 1172 (1982)). "Whether a deposition was necessarily obtained for use in the case hinges upon the trial court's factual evaluation of the course and progress of the proceeding and the nature of the evidence." Nani Koolau, 5 Haw. App. at 144, 681 P.2d at 586 (citation and internal quotation marks omitted).

The Yonejis claim that because one of the checks Mary wrote was addressed to Charlene, they would have called Charlene as a witness regardless of whether Charlene was a named defendant in their lawsuit. Thus, according to Nani Koolau, although Charlene was a named party, her deposition was still necessarily obtained for the case that the Yonejis were building against Mary so to justify an award of costs. See id.

Furthermore, the Yonejis are seeking costs against Mary, not against Charlene. HRCP Rule 54(d)(1) provides that "[e]xcept when express provision therefor is made either in a

---

[11](...continued)
other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

[12] HRCP Rule 54 provides in relevant part:

**Rule 54. JUDGMENTS; COSTS; ATTORNEYS' FEES.**
. . . .

**(d) Costs; attorneys' fees.**

(1) Costs Other Than Attorneys' Fees. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

staute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Consequently, the fact that Charlene was the prevailing party in the Yonejis' lawsuit against her should have had no bearing on the circuit court's determination of whether Charlene's deposition was "necessarily obtained for use in the case" against Mary. Nani Koolau, 5 Haw. App. at 144, 681 P.2d at 586. Therefore, the circuit court abused its discretion in denying the Yonejis' request for taxation of cost of Charlene's deposition fees.

## 2. Special Master's Cost

The Yonejis argue that "the circuit court abused its discretion in denying the Yonejis' taxation of cost of the Special Master fees." The Yonejis requested $16,407.06 for the portion of the Special Master's fees that were included in the Stipulation and an additional $1,857.87 for additional costs incurred to keep Special Master Williams available to testify at trial. The circuit court appears to have denied the Yonejis' request for taxation of cost of the Special Master's fee based on the fact that (1) the Stipulation provided a preliminary breakdown for how advanced costs and fees were to be distributed between the parties and (2) the Yonejis kept the Special Master available as a witness, even after the court ruled that "he had not been named a witness and not been recognized as a witness."

The Stipulation provided that

> 10. The fees and costs associated with the appointment of the Master shall be finally determined by agreement or by Court Order, provided that any required advance for such fess [sic] and cost shall be made (without prejudice) as follows: 42.5% by Neil/Claire Yoneji Trust, 42.5% by Owen/Charlene Yoneji Trust and 15% by the Mitsuo Yoneji Trust. For purposes of the Master's timekeeping, the Master shall keep time for his or her analysis for matter from March 1, 2008 to August 15, 2009, separate from his or her analysis from August 15, 2009, to the present.

(Emphasis added.) The Stipulation did not provide a conclusive distribution of fees and costs associated with the Special Master, as the circuit court's reasoning would suggest. Instead, the Stipulation provided a preliminary breakdown of how required

advance fees and costs should be divided between each trust involved and instructed that final determinations of payment distribution shall be "determined by agreement or by Court Order[.]" The circuit court did not issue a final order as to how the Special Master's fees and cost should be distributed between the trusts nor did the parties come to an agreement on the issue. Absent a finding that the stipulated procedure would result in a manifest injustice, the circuit court was not at liberty to depart from the stipulated procedure by picking and choosing which provisions of the Stipulation to follow. See Gakiya, 68 Haw. at 555, 722 P.2d at 464 ("While parties ordinarily are bound by the terms of their stipulations, we have allowed certain stipulations to be set aside or modified in order to prevent manifest injustice."). Given that Mary and the Yonejis did not enter into a final agreement as to the distribution of Special Master's fees and costs, the circuit court erred in denying the Yonejis' request for taxation of cost of the Special Master fees without first issuing a court order detailing how the Special Master's fees would be distributed between the parties.

### 3. Mediation Costs

The Yonejis claim "the circuit court abused its discretion in failing to award the Yonejis the cost of the mediator's fees." The Yonejis requested an award of costs for their share of mediation services that occurred on April 19, 2009. The circuit court ruled that "[a]s to the fees that were incurred by
the mediator, Mr. Keith Hunter, again, looking at the costs that are specifically authorized by Chapter 607, the Court is also denying this request."

The Hawai'i Supreme Court has specifically held that requests for costs related to mediation may be granted, even though not explicitly listed in HRS § 607-9 as taxable. See Arquette v. State, 128 Hawai'i 423, 445, 290 P.3d 493, 515 (2012). The supreme court distinguishes between court-ordered

mediation and voluntary mediation, holding that "unlike court-ordered mediation, a voluntary decision to enter mediation is 'severable from and unrelated to the litigation,' Wong [v. Takeuchi, 88 Hawaiʻi 46, 54-55, 961 P.2d 611, 619-20 (1998)], inasmuch as under such circumstances voluntary mediation is not a necessity of litigation." Arquette, 128 Hawaiʻi at 446, 290 P.3d at 516. Consequently, the supreme court has held that "when the parties voluntarily enter into mediation, it has been concluded that the losing party cannot be assessed the costs of mediation absent a compelling demonstration by the prevailing party." Id. This standard is grounded in the logic that "[a] cost incurred by the parties' joint decision to attempt to avoid trial would appear to be a cost separate from the underlying litigation, as it represents a shared attempt to avoid the costs of trial." Id. (emphasis omitted) (citing Wong, 88 Hawaiʻi at 54-55, 961 P.2d at 619-20 (1998)).

Ultimately, the Yonejis carried the burden of demonstrating to the circuit court a compelling reason to award their requested mediation costs. See Arquette, 128 Hawaiʻi at 446, 290 P.3d at 516. The Yonejis argued that their mediation costs were warranted because "[w]hile the instant lawsuit was not filed until October 26, 2009, the facts and claims herein existed at mediation." The record indicates that the mediator may have touched on issues relevant to the lawsuit, but that mediation also addressed issues that related to partition concerns that were separate from the issues found in the current lawsuit. Given that the mediation occurred before the commencement of the current lawsuit in an effort to resolve a variety of issues, some unrelated to the current lawsuit, the circuit court did not abuse its discretion in denying the Yonejis' request for mediation fees. See id. at 445, 290 P.3d at 515.

4. **Expert Consultation Costs**

The Yonejis contend the circuit court abused its discretion in denying costs arising from the Yonejis' retention and use of an accounting expert. The Yonejis requested $8,835.82

for the services of accounting consultants Bowen Hunsaker Hirai and Reed Hayes. The circuit court denied the Yonejis' request, finding that Bowen Hunsaker Hirai and Reed Hayes were "consultants," not experts, and did not testify at trial.

The Yonejis claimed Bowen Hunsaker Hirai and Reed Hayes were originally retained to provide an expert opinion at trial, but that the Yonejis later "relied upon the Stipulation appointing a Special Master, which negated the need for the expert." The Yonejis argued that "[b]ecause [their] consultant was hired to provide opinions at trial, and because his report was produced to [Mary], [the Yonejis'] expert/consultant's fees are taxable costs." The record indicates that Bowen Hunsaker Hirai and Reed Hayes provided services to the Yonejis before the Yonejis stipulated to the use of a Special Master.

The Yonejis appear to take issue with the circuit court's finding that Bowen Hunsaker Hirai was hired as a consultant, arguing that the accounting firm was "actually hired to provide expert testimony." In support of their appeal, the Yonejis claim that "an expert hired for use at trial is a taxable cost, even if the expert is not called to testify[,]" and cite to Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawai'i 292, 307, 972 P.2d 295, 310 (1999) in support of their contention. However, the Yonejis' reliance on Canalez is misplaced because Canalez involved an award for expert costs pursuant to HRCP Rule 68,[13] whereas the Yonejis sought costs pursuant to HRCP Rule

---

[13] HRCP Rule 68 provides:

**Rule 68. OFFER OF SETTLEMENT OR JUDGMENT.**

At any time more than 10 days before the trial begins, any party may serve upon any adverse party an offer of settlement or an offer to allow judgment to be taken against either party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall, in accordance with the agreement, enter an order of dismissal or a judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not

(continued...)

54(d). See Canalez, 89 Hawai'i at 307, 972 P.2d at 310 (recognizing that an award of costs under HRCP Rule 68 provides "an entirely new set of policy considerations" than an award of costs under HRCP Rule 54(d)); see also Buscher v. Boning, 114 Hawai'i 202, 223 n.15, 159 P.3d 814, 835 n.15 (distinguishing a Canalez analysis, pursuant to HRCP Rule 68, to an analysis under HRCP Rule 54(d)).

Under HRCP Rule 54(d), "expert witness fees are not allowed." Buscher, 114 Hawai'i at 223 n.15, 159 P.3d at 835 n.15 (analyzing expert witness costs under HRCP Rule 54(d)); Mist v. Westin Hotels, Inc., 69 Haw. 192, 202, 738 P.2d 85, 92 (1987)("[E]xpert witness fees are not taxable as costs, absent a statute specifically allowing such an expense."). Because expert fees are not taxable costs under HRCP Rule 54(d), the circuit court did not err in denying the Yonejis' request for costs pertaining to fees for Bowen Hunsaker Hirai and Reed Hayes.[14]

## IV. CONCLUSION

Therefore, we vacate the following entered in the Circuit Court of the Fifth Circuit:

(1) the May 1, 2013 "Order Granting in Part and Denying in Part Defendant Mary Kazumi Yoneji's Motion for Summary Judgment (Filed 2/26/13)," except that we affirm the portion of

---

[13](...continued)
>admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, either party may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

[14] We further note that it is of no consequence whether Bowen Hunsaker Hirai and Reed Hayes were retained as expert witnesses, as the Yonejis contend, or consultants, as the circuit court found, because this court has previously held that costs for consultant fees are also not allowed. See Tradewinds Hotel, Inc. v. Cochran, 8 Haw. App. 256, 271, 799 P.2d 60, 69 (1990).

the summary judgment related to the prima facie tort claims against Mary; and

(2) the March 7, 2014 "Amended Final Judgment."

This case is remanded for further proceedings consistent with this Opinion.

On the briefs:

Patrick K. Shea
Sara Jo Buehler
(Shea & Kamiya)
and
Rebecca A. Copeland
for Plaintiffs/Counterclaim
Defendants/Appellants.

Ryan G.S. Au
for Defendant/Counterclaimant/
Appellee.